J. D. Johnston, Jr., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 109698.  Promulgated May 10, 1944.

*E. C. Orme, Esq.*, and *Lee C. Bradley, Jr., Esq.*, for the petitioner. *Charles P. Bagley, Esq.*, for the respondent.

OPINION.

TYSON, *Judge*: Without explanation as to the basis for his determination, respondent "held" that petitioner was subject to income tax on that portion of the net income of J. D. Johnston, Jr. Co. "which was allocated to" his "wife, Mrs. Camilla Tatum Johnston."

On brief, respondent contends that petitioner's wife was not a bona fide partner in the firm for the purposes of the Federal income tax, and that the income therefrom attributed to her was taxable to petitioner. His basis for such contention is the assertion that the sole purpose of the wife's "purported entry into the business" was tax avoidance; that the "simulated sale" of petitioner's one-fourth interest in the old partnership's assets to his wife was for an inadequate price payable from the profits of the new business; and that she contributed no services to either the old or the new business.

For some years petitioner and his father had been equal partners in the business of manufacturing peanut butter. Some months prior to April 1, 1938, he unsuccessfully sought to sell his entire interest to his father and brothers. At about the same time the father took his daughter and seven sons in as partners in his theretofore individually operated business known as the Johnston Oil Co. The formation of a new peanut butter partnership was then discussed and agreed upon, in which petitioner and his wife would each have a one-fourth interest, and the Johnston Oil Co. would have a half interest. Prior to formation of the new partnership petitioner's wife gave him her note for $20,353.25 for half of his interest in the old partnership after offering to pay him $5,000 cash thereon. The note was paid on June 30, 1939,

out of the profits of the wife's share of the new business, with the exception of $335.75. The amount of the note was one-fourth the book value of the old business on April 1, 1938. On that date, the new partnership agreement was executed by petitioner, his six brothers, his sister, and his father, as members of the partnership of Johnston Oil Co., and petitioner's wife. This agreement specified the amount invested in the new partnership by each member, and the investment of petitioner was stated as $20,353.25 and that of his wife as an equal amount. These amounts added to the specified $40,706.51 investment by the Johnston Oil Co. were stated as "making a total net worth of $81,413.02." It was further provided that the profits should be divided "among the partners" in the proportions of 25 percent each to petitioner and his wife, and 50 percent to the Johnston Oil Co. The assets and liabilities of the old partnership were then taken over by the new. Under the same date a separate investment account for each of the members was opened in the firm books, that for petitioner's wife showing a credit balance entry of $20,353.25. Drawing accounts were set up on the books of the company for petitioner and his wife and at the end of each fiscal year each of those accounts was credited with the respective shares of petitioner and his wife in the profits of the business for that year. Petitioner's wife was at all times authorized to draw checks against the partnership's bank account and did so on various occasions, the amounts of such checks being charged to her drawing account. Under the partnership agreement petitioner had no power to divert from his wife her share in the profits of the new business.

By the new partnership a joint enterprise, or economic unit, was created differing essentially from the old partnership in that in the old partnership A. E. Johnston had a 50 percent interest as an individual while in the new partnership that individual interest was superseded by the interest of Johnston Oil Co., a partnership in which A. E. Johnston and his daughter and seven sons, including petitioner, were partners.

In view of the enumerated facts and other facts of record, we are of the opinion and so hold, that, as we have found to be a fact, petitioner's wife was a partner in the bona fide partnership of J. D. Johnston, Jr. Co. Cf. *Kell* v. *Commissioner*, 88 Fed. (2d) 453; *Humphreys* v. *Commissioner*, 88 Fed. (2d) 430; *B. M. Phelps*, 13 B. T. A. 1248; *Alfred T. Wagner*, 17 B. T. A. 1030; *Charles W. Crane*, 19 B. T. A. 577; *Albert G. Dickinson*, 23 B. T. A. 1212; *Richard H. Oakley*, 24 B. T. A. 1082; *Jasper Sipes*, 31 B. T. A. 709; *Walter W. Moyer*, 35 B. T. A. 1155; and *Justin Potter*, 47 B. T. A. 607. Whether that interest was acquired at an inadequate price because acquired for less than its fair value is not determinative. If it was for less than that value, then the fact that to

such extent her interest in the old firm might be a gift does not control the issue before us. *Kell* v. *Commissioner, supra; Commissioner* v. *Olds,* 60 Fed. (2d) 252; *Walter W. Moyer, supra; B. M. Phelps, supra; Albert G. Dickinson, supra; Jasper Sipes, supra;* and *Justin Potter, supra.*

There is no dispute that under the laws of the State of Alabama husband and wife are authorized to be partners in any lawful business. *Schroder* v. *Commissioner,* 134 Fed. (2d) 346; *Marcrum* v. *Smith,* 206 Ala. 466; *W. A. Bellingrath,* 3 B. T. A. 11.

It is undisputed that the other members of the partnership consented to petitioner's wife becoming a member thereof, since they signed the partnership agreement and continued to operate the business thereunder. Cf. *Rose* v. *Commissioner,* 65 Fed. (2d) 616; *Kell* v. *Commissioner, supra; Burnet* v. *Leininger,* 285 U. S. 136.

There is no evidence showing that the purpose of the wife's joining the new firm was one of minimizing petitioner's taxes, but even if such were the case it would not be determinative where, as here, there was a bona fide association of persons to carry on business as a partnership. *Chisholm* v. *Commissioner,* 79 Fed. (2d) 14, and cases cited therein, and *Walter W. Moyer, supra,* and cases cited therein. Where a wife owns a capital interest in the partnership it is immaterial that the wife contributed no services to the firm. *Rose* v. *Commissioner, supra; J. E. Biggs, Sr.,* 15 B. T. A. 1092; *R. E. Hinshaw,* 16 B. T. A. 1236; *Richard H. Oakley, supra; Walter M. Moyer, supra; Albert G. Dickinson, supra; B. M. Phelps, supra.* The rule is well stated in the latter case, where we said:

\* \* \* Each of the petitioners gave to his wife one-half of his capital in the business. From that time on each of the petitioners had capital invested in the business. It is immaterial that they furnished no services to the partnership and received no salaries from the partnership. If the petitioners furnishing the services were willing that the other members of the partnership furnish no services yet share equally with them in the profits of the business, there is no provision of law to prevent them from doing so. Although proof that persons claiming to be members of a partnership furnished no capital and contributed no services to the partnership might tend to prove that no partnership agreement was entered into, proof of such facts becomes immaterial when all members of the partnership agree that a partnership contract was entered into.

Also on the matter of services rendered, it may be noted that while petitioner had devoted 100 percent of his time to the old partnership's business, he devoted only about 65 to 75 percent of his time to the new business during 1938 and only about 25 percent of his time in 1939. Most of the work other than the actual mill work was apparently being performed by his father and four brothers, all of whom had an interest in the new partnership. Such situation under all the circumstances affords no basis for attributing the wife's share of the partnership profits to petitioner on the theory that it was income earned by him

through the rendition of his personal services. One might equally well question the extent to which petitioner had "earned" his own reported share of the income, giving due weight to the contributions of his father and brothers to the ultimate profit resulting.

Unlike *Mead* v. *Commissioner*, 131 Fed. (2d) 323; *Schroder* v. *Commissioner*, *supra;* and *Earp* v. *Jones*, 131 Fed. (2d) 292, relied on by respondent, this was not an arrangement between only a husband and wife to engage in an exclusively or predominantly personal service business, the income from which was due entirely to the husband's personal efforts. Manifestly, the income of petitioner's wife was an attribute of and flowed from her capital interest in the business rather than from the efforts and energy expended by petitioner in the taxable years. The cited cases are also otherwise distinguished on their facts. The facts here are more like those in *Kell* v. *Commissioner*, *supra*, and *Commissioner* v. *Olds*, *supra*.

In the *Kell* case the wife and children of the taxpayer, as an inducement for executing their notes for the purchase of certain properties which the taxpayer desired them to purchase, were told by the taxpayer that he would transfer to them his interest in a partnership, holding mineral lands and leases, from which they could expect to derive sufficient funds to pay the purchase notes. Under these circumstances the notes were executed by the wife and children, the transfer of the taxpayer's interest in the partnership was made to them, and moneys derived from the partnership were used in discharge of the purchase notes. There the wife and children not only acquired the property for which the purchase notes were given, but they also acquired, by reason of the giving of their notes, an interest in the partnership from the proceeds of which it was expected, when the notes were given, that they would be paid—as they were. The court held that the transfer made by the taxpayer was bona fide and he was not taxable with the profits realized from the shares of his wife and children in the business.

In the *Olds* case the taxpayer, engaged in the dock and timber business, sold, under a written agreement, an interest in that business to each of his three daughters, each executing therefor her demand note for $400,000 without interest. It was agreed that the taxpayer should conduct the business and that the daughters should withdraw from the profits only such amount as the taxpayer saw fit. Entries were made on the books showing the interests, as transferred to the daughters, and the daughters were charged on the books with their withdrawals, with the result that at the close of each year the books showed net balances in favor of the daughters. The court held the partnership to be bona fide and the father not taxable with the profits realized on the interests of the daughters in the partnership.

Although petitioner's wife drew checks during a certain period on the firm's account after she entered the partnership, respondent dwells on the fact that for a period of time such checks were not charged against her separate drawing account, but against that of petitioner. For part of that period, however, the checks were charged to an account designated on the books as the drawing account of petitioner "and wife" and subsequently all such checks charged to the petitioner's drawing account and to the joint account were transferred as a charge against the wife's individual drawing account. The bookkeeper had been instructed to charge all her checks to her drawing account unless the check bore a notation to the contrary. As to failure of the bookkeeper to make the charges to the wife's drawing account, we think that what was said in *Clara B. Parker, Executrix*, 30 B. T. A. 1231; appeal dismissed, 75 Fed. (2d) 1010, is apposite:

* * * We think such may reasonably be accounted for, however, when the partnership is viewed in the light of the business and family relationship existing between the parties as shown by the record. * * * The partnership was somewhat in the nature of a two-family business arrangement, Parker and his wife and mother-in-law on the one side and Brown and his wife on the other, the two men continuing actively to carry on the business, the women partners being satisfied to have their interests looked after by the men. This character of partnership we think largely accounts for the manner in which the business was conducted and book entries made with respect to the business.

The respondent calls attention to the fact that for the period from May 1, 1938, through December 31, 1940, withdrawals from the firm were used in the amount of $2,222.36 for household expenses and says that this evidences dominion and control of petitioner over the profits of the firm. We thing that this fact is of little, if any, significance, since the wife had no agreement with petitioner that she should make such expenditures and since she had a right to expend her funds in any manner she saw fit. In this connection it may be noted that such withdrawals were made only when petitioner was absent.

We hold that petitioner was not taxable with the amounts to which his wife was entitled as her shares of the profits of the J. D. Johnston, Jr. Co. and that the Commissioner was in error in including such amounts in petitioner's income.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

STERNHAGEN and HILL, *JJ.*, dissent.

---

HARRON, *J.*, dissenting: We have recognized a wife as a person carrying on a business under a partnership with her husband where she has contributed capital or property and services, or where she has

acquired the ownership of property in the business. *Albert G. Dickinson*, 23 B. T. A. 1212; *Clara B. Parker, Executrix*, 30 B. T. A. 1231; *Walter W. Mayer*, 35 B. T. A. 1155. The decision of the question in each case is largely dependent upon the particular facts. In this case, there is room for difference of opinion upon the real situation which the facts present, and I do not agree with the views of the majority on what the facts here show.

The fact question is, I believe, whether or not the wife of petitioner acquired complete title to a one-quarter interest in the business, including its assets. By complete title, for income tax purposes, is meant complete dominion and control, or, the entire economic interest in property which produces income. *Corliss* v. *Bowers*, 281 U. S. 376; *Burnet* v. *Wells*, 289 U. S. 670; *Helvering* v. *Clifford*, 309 U. S. 331; *Douglas* v. *Willcuts*, 296 U. S. 1. A taxpayer-member of a partnership may not escape liability for tax upon partnership business earnings through a mere assignment of the future earnings. *Burnet* v. *Leininger*, 285 U. S. 136; *Helvering* v. *Horst*, 311 U. S. 112; *Mead* v. *Commissioner*, 131 Fed. (2d) 323; certiorari denied, 318 U. S. 777; *Earp* v. *Jones*, 131 Fed. (2d) 292; certiorari denied, 318 U. S. 764.

In considering the facts in this case, the situation as it existed before the agents of the Bureau of Internal Revenue investigated the arrangement should control, and little weight should be given to the situation as it was modified after the investigation pursuant to corrective steps. The situation for this Court to examine is the one which the parties created in the first instance. It is reasonable to presume that they would have continued everything in status quo but for the investigation of revenue agents. The tax years are 1938 and 1939. During the taxable period the wife had a separate drawing account, as petitioner had, but there was also a joint drawing account in the names of petitioner and his wife. The wife's share of firm profits alone was credited to her separate drawing account. But a withdrawal of $2,500 was charged to the joint drawing account, which was drawn and used by petitioner in 1939 to purchase some Government bonds for the wife. Also, during the taxable period the wife withdrew by checks signed by her various amounts for household expenses and for her income tax but, originally, these withdrawals were charged either to petitioner's separate drawing account or to the joint drawing account. Apparently, this was done because there were no balances of credits to the wife's separate drawing account, all credits to the wife's account having been transferred to credit the petitioner's drawing account. The facts as set forth in the findings of fact do not show how the credits were made to the joint drawing account, or the source of such credits, or how the joint drawing account was made to balance or offset the separate draw-

ing accounts of petitioner and of his wife, even though bookkeeping rules necessitate some debit and credit entries from the separate accounts to the joint accounts. The portion of the firm's profits which were at first credited to the wife's separate drawing account passed over to petitioner under the theory that the wife was making payment to the husband for the purchase of one-half of his one-half interest in the business. Unless there was a bona fide sale to the wife, it would have to be held that the wife did not receive and had no control over the earnings at first credited to her. All withdrawals by the wife to pay household expenses would be in fact the use of income to discharge the husband's obligation of family support. The withdrawal by the husband of a sum to purchase bonds for his wife would be more in the class of a gift of income of petitioner to his wife. The facts, such as they are, indicate that petitioner had complete control of the share of the partnership income attributed to the wife; and such interpretation would surely be necessary if there was no bona fide sale of an interest to the wife.

The facts relating to control over and use of income dovetail with the facts relating to the purported transfer of an interest in the business to the wife. The facts relating thereto are not clear-cut. There was an alleged sale of a one-quarter interest for about $20,300. Petitioner had the burden of clearly proving that he transferred part of his interest to his wife by a sale, by a gift, or by a hybrid sale and gift. Petitioner apparently failed to meet this burden of proof, as far as the findings of fact show. Revenue agents questioned whether the alleged sale was for an adequate consideration. Petitioner, to settle the matter, filed a gift tax return, but did not admit that a gift of any portion of the one-quarter interest was made. Petitioner appears to have rested his case in this Court upon the theory that he sold part of his interest to his wife. The majority opinion does not make this clear. But the record leaves a strong doubt in the matter of whether there was a bona fide sale. There was no evidence of a sale other than oral testimony. There was no bill of sale or any documentary evidence upon which the wife could establish her title. There is no clear evidence that there was a sale for adequate consideration. It appears that the conclusion reached above that there was a sale is based entirely upon self-serving statements, which are not satisfactory proof. See *W. M. Buchanan*, 20 B. T. A. 210. The evidence on the point is much weaker in this case than in *Kell* v. *Commissioner, supra*, one of the authorities upon which the majority view relies. In the *Kell* case, there was the combined evidence of a bona fide transfer of an interest found in a written document, a letter from the donor-husband, and the use of income for the benefit of the donees, separate and apart from the donor, showing that the donees in reality received the income produced by the interest given

to them. Such facts are not present here. The record here seems to support the conclusion that there was no *bona fide* sale of an interest in the business by petitioner to his wife. If such finding of fact were made, and I believe the record requires such finding of fact, then the evidence that petitioner received substantially all of the earnings attributed to the wife's alleged interest destroys every vestige of petitioner's contentions.

Or, if the theory of a sale of an interest is abandoned, what evidence is there of a gift of an interest? Absolutely none, for there was no donative intent and the wife did not receive dominion and control over the fruits of a property interest, to wit, the income produced.

In conclusion, giving consideration to the question within the scope of the considerations in the majority report, I would hold that the facts did not show that there was a transfer of an interest to the wife making income allocable to such interest taxable to her rather than to petitioner.

But I would examine closely the evidence in other respects. Has petitioner proved that the income in question was produced by property, assuming, *arguendo*, that an interest in property had been transferred to the wife? Even though the business employs some physical assets, if the earnings of the business are due primarily to the personal efforts of petitioner and the others, excepting the wife, who rendered no services, then I would question that the wife was carrying on a business with her husband within the purview of section 181 of the Internal Revenue Code. The income of the business here very largely depends upon the skill in buying the product which is processed or manufactured. Capital in the form of money is required. Did the wife in reality contribute to such capital? The majority report does not show any of the facts within this realm of inquiry. Whether or not the *Mead* and *Earp* cases would control here, in principle, depends upon the facts relating to the manner in which the income is produced. In cases involving marital partnerships, I believe the burden of proof upon the petitioner extends to proving that the income in question is produced by property and not by personal efforts, where the wife is not contributing any services and the husband's contentions are based upon the theory that the wife has contributed capital to the business. If the "interest" of the wife amounts to no more than the husband's assignment of future earnings, there should not be allowed a shifting of tax liability, because of the established rule that earnings are taxable only to the person who earns. It appears that petitioner has not produced evidence to show conclusively that the arrangement was not a mere assignment of future earnings to the wife.

SMITH and OPPER, *JJ.*, agree with this dissent.