## Felix Zukaitis, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 43. Promulgated May 10, 1944.

*Robert Ash, Esq.,* and *Morris M. Berman, C. P. A.,* for the petitioner.

*Melvin S. Huffaker, Esq.,* for the respondent.

**OPINION.**

SMITH, *Judge*: Petitioner contends that he and his wife operated the West Side Beer Co. as equal partners and that each of them is taxable

on one-half of the profits of the business for 1939 and 1940. Respondent contends that petitioner operated the business as a sole proprietorship and that the alleged partnership was "a fiction and a sham; that although in form it appeared to be a partnership it was not such in substance, being merely a means by which this petitioner might avoid the payment of income tax on a substantial portion of his income."

We think that the evidence supports petitioner's contentions as to the existence of the partnership from February 14, 1939. There can be no doubt that petitioner and his wife intended by their agreement of February 14, 1939, to join in the operation of the business of the West Side Beer Co. as equal partners and that each should be entitled to one-half of the profits of the business from the date of the execution of the partnership agreement. Petitioner's wife had taken an active part in the business since its inception in 1931. From a small beginning in that year she and petitioner, working together and with their combined capital, had built up a business of considerable size by 1939. For several years petitioner's wife worked long hours for comparatively small pay. Her duties and responsibilities increased with the growth of the business. During the taxable years 1939 and 1940 and for several prior years she had complete management of the office and performed various important duties. She managed the office while petitioner spent most of his time on outside matters. The evidence shows, we think, that the success of the business was due as much to her efforts as to those of petitioner. Petitioner's wife testified, and her testimony is uncontradicted, that she furnished $1,500 of the capital upon which the business was begun in 1931. She thus had a stake in the business from the beginning, apart from her interest as an employee. In *Humphreys* v. *Commissioner*, 88 Fed. (2d) 430, the court stressed the importance of the fact that the wives there furnished the original capital, saying in its opinion:

* * * Though the present case is one where the services of Humphreys and Day contributed to the earnings of the firm, the capital furnished by their wives was what started the business, and this and the additional capital which they later contributed helped to furnish the moneys necessary to conduct it. * * *

Respondent's contention that petitioner obtained the $1,500 from his wife (then Gladys Dauksza) as a loan is not supported by the evidence before us. It does not appear that either of the parties ever treated it as a loan in their dealings with one another or so regarded it. To the contrary the evidence is that petitioner's wife always treated it as a capital contribution to the business.

In *Meehan* v. *Valentine*, 145 U. S. 611, 618, the Supreme Court defined a partnership as follows:

The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing

property or services, and having a community of interest in the profits. *Ward* v. *Thompson*, 22 How. 330, 334.

Here, as pointed out, petitioner and his wife in a very real sense "joined together to carry on a trade or adventure for their common benefit." Here, too, the wife contributed both capital, in a substantial amount, and services commensurate with those contributed by petitioner.

The respondent in his brief does not place any great reliance upon the fact that husband and wife partnerships were not fully recognized under the laws of the State of Michigan prior to 1942. It has been held in a number of cases that, while under the Michigan law the wife can not be held liable upon the contracts of a partnership in which she and her hubsand are partners, the wife is not deprived of her right to a division of the profits from a business which she and her husband operate as a partnership and is not relieved of the obligation to report her share of the income from the business in her individual income tax return. See *L. F. Sunlin*, 6 B. T. A. 1232; *Earle L. Crossman*, 10 B. T. A. 248; *Albert Kahn*, 14 B. T. A. 125; *R. E. Wing*, 17 B. T. A. 1028; *Atwood* v. *United States*, 3 Fed. Supp. 321.

The petitioner claims that his wife was an equal partner in the business of the West Side Beer Co. from January 1, 1939. The petitioner's wife testified, however, that she did not think that she was entitled "to any of the earnings of the business prior to the formal execution of the partnership agreement," which was on February 14, 1939. We are of the opinion, therefore, that the petitioner is taxable upon the entire profits of the business to February 14, 1939, and to only one-half of the profits during the balance of 1939 and for the calendar year 1940. The profits of the business allocable to the period January 1 to February 14, 1939, are such portion of the profits for the entire calendar year 1939 as the number of days from January 1 to February 14, 1939, bears to 365 days.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

HARRON, *J.*, dissenting: There is, in this proceeding, a somewhat difficult problem in the weighing of the evidence. The evidence consists almost entirely of the testimony of petitioner's wife. Petitioner did not testify, although he was available. The testimony of the wife is unsatisfactory in many respects, and in such situation, the case of petitioner is greatly weakened by his failure to offer testimony. The majority view is that petitioner's wife "contributed both capital, in substantial amount, and services commensurate with those contributed by petitioner." If that conclusion represents a correct judgment of

all of the facts, then there is much to support petitioner's contention that he and his wife, in 1939 and 1940, carried on a business in partnership. But I am unable to agree with the above conclusion. I do not think it is supported by the evidence.

It is necessary to make some comment upon the evidence. It was stated at the hearing that petitioner rested his case upon the arrangements which he made in 1939, even though evidence was offered which related to the origin and early conduct of petitioner's business. Petitioner does not contend that he did not conduct his business as a sole proprietorship prior to 1939. The evidence clearly shows that he did. The question is whether the arrangements in 1939 effected a change from a sole proprietorship to a partnership.

The majority view gives much weight to the testimony of Mrs. Zukaitis relating to an advance of $1,500 to petitioner in 1933, concluding that from the start she "had a stake in the business." I find the testimony upon this point unconvincing. Part of the testimony is as follows:

Q. You didn't expect to get the $1,500 back?
A. Well, we had intentions of getting married, so I didn't worry about it.
Q. Will you answer the question, please? Did you expect to get that $1,500 back when you put it in?
A. Well, yes.
[Further questions and answers.]
Q. Then you would say you didn't expect to get it back?
A. Well, if I was going to be married to him, I wouldn't. I would expect to get it back, but we had intentions of getting married.
Q. Because you were going to get married, you didn't expect it back?
A. That's right.

Later the witness was asked if she had made any loans to petitioner's business in 1939 or 1940.

Q. For the year 1940, did you loan any money to your husband?
A. No. The loan was originally in 1933.

Elsewhere in her testimony, Mrs. Zukaitis stated that she made an investment in the business in 1933 with a verbal understanding that she would be a partner in the business, but at another time she testified that she did not consider that she was entitled to any of the earnings of the business prior to the execution of the formal partnership agreement.

In 1933 Mrs. Zukaitis did not have $1,500 of her own. Some of that amount, not stated, she obtained from her parents, under arrangements which are not disclosed.

Mrs. Zukaitis' testimony on this point demonstrates, in my opinion, that there was, in fact, no understanding with her husband about the effect of her making $1,500 available to him, other than that she and

her parents helped him along on the basis of a gift. I consider all of the testimony on this item as wholly irrelevant and immaterial to the issue presented, and I believe that the question should be considered chiefly in the light of the facts relating to the general nature of the business involved, and the manner in which the business was conducted prior to and after the 1939 arrangements.

The nature of the business involved is of chief importance because of petitioner's theory that the wife contributed capital and services in such degree that it can be said that the parties were carrying on a business in partnership. The income of the business is derived from sales of large inventories of beer and wines, of which there was apparently a quick turnover. The inventory of goods purchased in 1938, 1939, and 1940 cost $538,209, $630,896, and $619,803, and in each year almost all of the goods were sold, the inventory on hand at the close of each year averaging only $15,000. The gross receipts in each of the above years were $727,390, $804,716, and $781,726, and the net income was around $50,000 a year. Petitioner did the buying and was the chief salesman. He seems to have employed salesmen, in addition. Salaries paid to others in each year totaled $49,453, $56,032, and $57,937. The only conclusion which can be drawn, reasonably, is that the earnings of the business were due to petitioner's skill in buying, selling, and managing the business. The capital required in the business in the taxable years and in the preceding year, 1938, taken for comparison, was cash. Obviously, petitioner's wife did not make any actual contribution to the working capital of the business. Petitioner purportedly made a gift to his wife of an interest in one-half of the physical assets in the business as they stood at the end of 1938. Those assets were chiefly office and warehouse equipment, refrigerators and trucks, all useful and necessary implements in the business but not income-producing.

Under such facts, the business involved is so like the types of business which were involved in *Earp* v. *Jones*, 131 Fed. (2d) 292; certiorari denied, 318 U. S. 764; *Mead* v. *Commissioner*, 131 Fed. (2d) 323; certiorari denied, 318 U. S. 777; and *Schroder* v. *Commissioner*, 134 Fed. (2d) 346, that I consider those cases to control the issue in this case.

In *Earp* v. *Jones, supra,* guiding principles are set forth for the determination of the question which is presented. The court said that an arrangement between husband and wife may be sufficient to constitute a legal partnership under local law, but that such result is not determinative; that the question is whether the arrangement is sufficient to effect a change in the husband's economic status for income tax purposes under the Federal income tax law. The court set forth two

tests: (1) The change in the method of operating a business must be real and substantial rather than a mere change in form; (2) an essentially new and different economic unit must be formed.

The court in the *Earp* case found its course charted by certain Supreme Court decisions to which reference was made. The court cited many instances where the Supreme Court has disregarded formal arrangements in order that effect could be given to the dominant purpose of the revenue laws, which is to tax income to those who earn it or otherwise create the right to receive it. The creation of marital partnerships is often only a device to multiply one economic unit into two or more. If it is merely such device, it is not entitled to recognition under the Federal income tax law.

The partnership arrangements in this case effected no change in the conduct of petitioner's business. Petitioner continued to conduct and direct selling and to carry on the negotiations for credit and purchases. It was provided in the agreement that petitioner should be the general manager of the business, with complete charge of the actual operation of the business. That provision operated merely to continue in petitioner the same authority which he had always exercised. Petitioner's wife was not given any voice in the management of the business under the agreement. Her duties were not enlarged. She did not participate in buying, selling, or managing. The business was carried on in exactly the same way as it had been prior to 1939. The arrangements did not result in the "creation and carrying on of a new joint enterprise or uniting their joint efforts or substance in a new undertaking." *Earp* v. *Jones, supra.* An essentially new and different economic unit was not formed. The business received no new property or capital, but operated with the same assets and capital which had been built up by petitioner as the sole proprietor of the business. Where everything of value to a business is contributed by one person and all of the profits are actually earned by that individual, then all of the profits are taxable solely to him. *Mead* v. *Commissioner, supra.* Here, "all of the profits of the business were earned" by petitioner after the arrangements which he made in 1939, in exactly the same way that they had been earned prior to 1939, notwithstanding the fact that the wife had at all times contributed some services to the business, formerly for a salary.

It is contended, in effect, that the alleged gift of an interest to the wife changed the economic status of petitioner. In fact it did not, except to establish the basis for a reallocation of income. The question can not be determined by a process of rationalization about the division of income. The subject matter of the gift did not produce income. The wife was restricted in her command over the property in which she was given an interest. Until the business is liquidated, and a

distribution of assets is made, the wife's interest is more fanciful than real. See *Francis E. Tower*, 3 T. C. 396. The entire arrangement amounted to no more than an effort to transfer one-half of future earnings resulting from petitioner's efforts to the wife. Under such circumstances, the wife received distributions of earnings solely because of the marital relationship.

The chief variation in the facts in this case from the facts in the *Earp*, *Schroder*, and *Mead* cases is that petitioner's wife had been a paid employee prior to the arrangements, and that she continued to render some services afterwards, but without being paid a salary. But see *Francis Doll*, 2 T. C. 276, 283, where the fact that the wife contributed services to the business was held not to be determinative where the income of the business was produced primarily by the efforts of the husband.

The majority view regards the evidence as showing that Mrs. Zukaitis "had complete management of the office and performed various important duties," and that "her duties and responsibilities had increased with the growth of the business." Here again, I am obliged to record a respectful dissent on the matter of what the evidence shows. There is the testimony of Joseph Tauter, an employee in the business. He testified that during 1938 and the taxable years he took care of the office and the maintenance of equipment in addition to keeping the books and records. The partnership agreement recites that petitioner shall be the manager of the business. There is a large doubt in my mind whether Mrs. Zukaitis' services were as important as she obviously attempted to make them in her testimony. She was a part-time worker in 1938 and through the taxable years. Her services decreased rather than increased during the period in question. Petitioner's wife did render some services in the business; but there is little concrete evidence from which to make any conclusion about the value of her services to the business. She had been an employee. She had received full payment in salaries for her services. She so testified and her testimony conflicts with the recital in the partnership agreement that she had given her efforts to the business without compensation, which appears to have been an untrue recitation of the facts. Her services appear to me to have been largely clerical, however earnest she may have been in her desire to help her husband. Under all of the facts, I believe that the services of petitioner's wife to his business in the taxable years were not sufficiently connected with the production of the large income of the business to provide a basis for holding that she carried on a business in partnership with petitioner. This is not to say that there cannot be any instance where a wife's services in a business constitute the carrying on of a business in partnership. But the rule cannot be that in every

instance where a wife contributes some minor services far removed from the earning of the income of the business there is a carrying on of a partnership business within the scope of the revenue acts. Each case should stand on its particular facts.

I believe that the holding in this case should be that this marital partnership is not entitled to recognition for income tax purposes.

OPPER, *J.*, agrees with this dissent.