LEWIS HALL SINGLETARY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5090.   Promulgated June 30, 1945.

*S. P. Cain, Esq.,* for the petitioner.
*Edward L. Potter, Esq.,* for the respondent.

OPINION.

MELLOTT, *Judge*: The facts are not seriously in dispute. Do they show that petitioner and his wife were "carrying on business in partnership" (sec. 181, I. R. C.) during 1940 and that he, his wife, and his parents were doing so in 1941? That is the sole question.

Many cases have been decided recently involving claimed family partnerships. (See, e. g., the majority, concurring, and dissenting opinions in *Camiel Thorrez*, 5 T. C. 60; *Jacob DeKorse*, 5 T. C. 94; *Hodgson* v. *Willingham*, ——Fed. Supp. —— (May 17, 1945). Cf. *Lusthaus* v. *Commissioner*, 149 Fed. (2d) 232; *M. M. Argo*, 3 T. C. 1120; affd., 150 Fed. (2d) 67 (C. C. A., 5th Cir.) ; and *Tower* v. *Commissioner*, 148 Fed. (2d) 388. Petitioner cites some earlier cases which support his contention that the income was correctly reported by him and his relatives. *Walter W. Moyer*, 35 B. T. A. 1155; *Richard H. Oakley*, 24 B. T. A. 1082; *B. M. Phelps*, 13 B. T. A. 1248; *Robert B. Scherer*, 3 T. C. 776; *J. D. Johnston*, 3 T. C. 799; *M. W. Smith, Jr.*, 3 T. C. 894, and others. Respondent cites *Burnet* v. *Leininger*, 285 U. S. 136; *Corliss* v. *Bowers*, 281 U. S. 376; *Lucas* v. *Earl*, 281 U. S. 111; *Gregory* v. *Helvering*, 293 U. S. 465; *Griffiths* v. *Helvering*, 308 U. S. 355; *Helvering* v. *Clifford*, 309 U. S. 331; *Helvering* v. *Horst*, 311 U. S. 112; *Higgins* v. *Smith*, 308 U. S. 473, and others, some of which dealt with pure shams, some with an unrealistic approach to the practical problems of taxation, attributing the fruits to a tree other than that on which grown, and some so lacking in substance that the act causing the difficulty was ignored. In the present state of the development of the law on the subject we must analyze the facts, apply the usual presumption of correctness to the respondent's determination, and ascertain whether the petitioner's evidence has been sufficient to establish that it was erroneous.

Petitioner and his wife both testified that tax saving had not animated him—and them—in the making of the gifts. We accept the evidence as true; but motive is neutral. Testimony was also adduced indicating that petitioner felt impelled to make each gift by fairness to the respective recipients—in the case of the wife in recognition of the fact that she had aided, financially and otherwise, in the establishment of the business, and in the case of the father because he had signed a note, thereby aiding petitioner in securing essential credit. We would not discount a laudable show of gratitude; but, as we view

it, the essential determination is more fundamental—was there a real carrying on of business in partnership?

First, the alleged partnership with the wife. The document shown in our findings, executed by petitioner "in consideration of love and affection" and also signed by his wife, together with the treatment of the income as reflected in the transcripts of account introduced in evidence, the returns and some brief testimony to the effect that the parties had used some of the income for the purchase of a farm, constitute substantially all of the evidence adduced. The document purports to be both a deed of gift and a partnership agreement. Borrowing the language of Justice Douglas in the *Clifford* case, *supra*, it is difficult to believe that petitioner felt himself to be any the poorer after it was executed or, if he did, that it had any rational foundation in fact. The earnings—exclusive of a nominal amount used to pay the wife's income tax—remained in the business throughout the two years presently in issue, with the sole exception of $2,400 withdrawn by the wife at the end of the second year. After these withdrawals there remained in the business a credit balance of almost $30,000 representing her alleged share of the earnings. The wife brought in no new capital and contributed no services. The agreement to the effect that "both  *  *  *  are to give their entire time to the business" is rendered innocuous by the exception immediately following. The business was carried on precisely the same after the document was executed as it had been carried on before. Moreover it is not at all clear that the business was not largely personal in its nature, where capital was only incidental. Cf. *Doll* v. *Commissioner*, 149 Fed. (2d) 239. In any event the evidence falls far short of convincing us that the respondent erred in determining that the 1940 income from the business conducted under the firm name of Sing Oil Co. was taxable in its entirety to petitioner.

The evidence involving the creation of the alleged partnership for 1941, in which petitioner's father and mother were included, is equally tenuous. The father and mother both testified. It was obvious, however, that neither seriously considered himself to be carrying on a business in partnership with petitioner. Being the parents of eight children, they resided on what the father characterized as a "six or seven horse farm," 7½ or 8 miles from petitioner's home. He had "talked generally [with his son] about running the business." When asked how many stations were closed during 1941 he replied: "I don't recall exactly. I didn't have so much to do with running the business, I was farming, and I trusted it, myself, you know, to him. There could have been one or something like that that was closed." When asked whether the son discussed with him the policies of the business or any changes that were made, he responded: "Well, not every time, I don't reckon he did. He had experience in the oil business. It

looked like it was making pretty good, I wanted to get in and started in it, I really did. I wanted to get in something to beat farming that I thought would, but I didn't know how it was coming out." The mother stated that she understood enough about partnership business to know that if losses were sustained the farm might be lost.

Petitioner testified that he and his wife had "sold half of these stations to * * * [his] father and mother." Whether any profit was reported in income as a result of the "sale" was not shown. The transaction was couched in the form of a sale, the consideration being a $20,000 note, which, it was understood, would be paid out of the profits of the business. The transcripts of account indicate th: t the note was ultimately paid, the payments in the meantime to the father and mother being comparatively nominal and probably—although this is mere surmise—being used largely in paying tax on the income. One circumstance having real significance in weighing the evidence for the purpose of ascertaining whether a bona fide gift had been made to the father, however, is petitioner's admission under cross-examination that he had made "an arrangement" with his father that in case of death he is to leave his part of the business to him by will. Thus the net effect of the whole arrangement seems to be that the father put nothing into the business in the way of capital or labor and, at least during the taxable year, took nothing out except sufficient to pay the tax on the share of the income shown on the information returns to be due him. Most of the income was left in the partnership for distribution to petitioner and his wife for the ostensible purpose of acquiring a limited interest, which will cease—i. e., be returned to petitioner—upon the father's death. Whether a similar arrangement was made with the mother is not definitely indicated by the record. Apparently it was; for, after petitioner had stated that he had such an arrangement with his father and that he had made some insurance "to them," he was asked: "You mean your father and mother?", to which he replied, "Yes Sir. If I precede them in death, why—," at which juncture he was interrupted.

Further discussion of the facts and applicable authorities would only unnecessarily extend this opinion. Our best judgment is that petitioner has failed to prove that the income from the business carried on during the taxable years under the name of Sing Oil Co. did not belong *in toto* to him, as the respondent determined. Accordingly,

Reviewed by the Court.

*Decision will be entered for the respondent.*

BLACK and TYSON, *JJ.*, dissent.

---

LEECH, *J.*, dissenting: The majority apparently holds that no partnership between the petitioner and his wife existed for tax purposes.

This conclusion, I think, is clearly wrong. See *Felix Zukaitis*, 3 T. C. 814; *H. D. Webster*, 4 T. C. 1169. The similar conclusion of the majority as to the alleged partnership consisting of the petitioner, his wife, and his father and mother is less doubtful. I would not be disposed to disagree on that point, both because of a failure of proof and on the ground that some of the evidence tends to contradict the completeness of the gift by petitioner to his father and mother, upon which their status as partners rests. See *Carl P. Munter*, 5 T. C. 39.

ARUNDELL, VAN FOSSAN, and DISNEY, *JJ.*, agree with this dissent.