Nestor J. Decker v. Commissioner.
Decker v. Commissioner
Docket No. 3922.
United States Tax Court
1946 Tax Ct. Memo LEXIS 24; 5 T.C.M. (CCH) 1009; T.C.M. (RIA) 46278; December 2, 1946
Lee E. Joslyn, Jr., Esq., and J. H. Amick, C.P.A., 809 Majestic Bldg., Detroit, Mich., for the petitioner. Melvin S. Huffaker, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined a deficiency in income tax for the year 1941 in the amount of $19,731.36. The deficiency results chiefly from increase of petitioner's share of income of a partnership from $24,200.19 to $48,675.65. Minor adjustments are not contested by petitioner. Respondent has determined that petitioner is taxable on two-thirds of the income of a partnership, and that no part of the income of the business is taxable to petitioner's wife. Petitioner contends that his wife was a bona fide member of a partnership in *25 1941, and that one-third of the earnings were taxable to her. Petitioner filed his return with the collector for the district of Michigan. Findings of Fact Petitioner and his wife, Elizabeth R. Decker, are residents of Detroit, Michigan. They were married in 1920. They have five children whose ages range between 10 and 23 years. 1. During the period 1922 to 1941, petitioner was employed by a corporation, Hotchkiss Tool & Engineering Company, in various capacities, and as manager from 1925 on. The business of the corporation was the manufacture of machine tools and gauges. Petitioner's interest in the corporation became substantial. By the end of 1934 he was a stockholder, officer, and director. He received 50 percent of the net profits as part of his salary. In March 1941 he arranged to purchase all of the stock of the corporation for $60,000. The stock was issued, one-half in the name of petitioner, and one-half in the name of petitioner's wife. In connection with the issuance of stock to petitioner's wife, petitioner reported in his gift tax return for 1941 that he made her a gift of $10,000 of the stock. She purportedly assumed an obligation to pay the sellers of the stock *26 $20,000 for part of the stock which was to be issued in her name. Such payment was made in 1942 out of the earnings of a partnership, as will be hereinafter set forth. In November 1941, after all the stock had been acquired, petitioner purchased all of the physical properties of the corporation, Hotchkiss Tool & Engineering Company, for $40,000. Thereafter he conducted the business of the corporation as a sole proprietorship under the same name, Hotchkiss Tool & Engineering Company. At some time in 1943 or 1944 the corporation was dissolved. It is not claimed that petitioner's wife had any interest in the above named sole proprietorship business. The issue presented does not relate to the income of either the above named corporation or sole proprietorship. During the taxable year 1941, and prior, petitioner devoted practically all of his time during regular business hours to the business of Hotchkiss Tool & Engineering Company. 2. Francis N. Decker is a brother of petitioner. In 1936 he was 24 years old. He was a machine tool operator. In 1936, petitioner and his brother discussed setting up a machine shop with specialized equipment to be used for precision boring of tools, *27 dies, and gauges. There was need in Detroit for such shop. In October 1936 petitioner ordered a Swiss jig boring machine at a cost of about $9,000, which was delivered in April 1937. On June 26, 1937, petitioner and his brother entered into a partnership agreement, agreeing to conduct a business of a machine shop under the name of "Precision Boring Co." in Detroit. A certificate of co-partnership was filed with the clerk for Wayne County, in which it was stated that the partnership was to continue for a period of 20 years. The partnership agreement provided that 75 percent of the capital was to be advanced by petitioner, and 25 percent by Francis N. Decker; that any profit, loss, or interest in the partnership was to be shared upon that basis; that the agreement could be terminated on 60 days notice from either party; and that if one party desired to dispose of his holdings or terminate the partnership, he should first offer his interest to the other partner at the then present worth or book value. Petitioner contributed $8,642.33 to the capital of the partnership, and Francis N. Decker contributed $2,000. From its organization in 1937 through 1940, the partnership, Precision *28 Boring Co., conducted a business of processing materials furnished by customers in accordance with their specifications. Jobs were usually completed in a day. The business did not have or need any inventory of materials. At first the Swiss jig borer was the only machine owned, and Francis N. Decker operated the machine. Later, additional machinery was acquired and employees were hired to operate the machines. Francis N. Decker devoted all of his time to the business and was the manager. He received orders, solicited business, employed machinists, supervised all work, and, in general, handled all of the business of the partnership. He received a salary in addition to 25 percent of the profits. His salary, prior to 1941, was as high as $100 per week, plus 10 percent of profits before profits for partners under the agreement. The Hotchkiss Tool & Engineering Company was one of the customers of the Precision Boring Co. Petitioner left the daily operations of the business of Precision Boring Co. to his brother, but he consulted with his brother about the development of the business, and he made loans to the partnership amounting to an aggregate of about $20,000. He opened the books *29 for the partnership. He performed all of the bookkeeping work, doing such work on Sundays or during evenings. He had authority to sign checks. Petitioner did not receive from the partnership any salary or compensation for the services he gave to the business. The net income of the partnership for the years 1937 to 1940, inclusive, was as follows: 1937
$ 1,011.49
1938
1,940.58
1939
9,670.26
1940
19,331.45
At the end of 1940, the prospects of increased business for the partnership was evident. Additional machines were ordered, costing about $25,000, which were to be delivered in 1941. Plans were made in 1940 for building a plant at a cost of about $37,000. The new building was completed in 1941. During 1941 petitioner made further loans to the partnership to apply to the purchase of new machines and the construction of the building. As of December 31, 1940, the total assets and liabilities of the partnership amounted to $45,682.89. Assets comprised cash and accounts receivable totalling $15,356.19; and machinery, tools, and buildings totalling $30,326.70, (book figures without reserves for depreciation). The only liabilities of the partnership, other than *30 reserves for depreciation of $5,565.30, were a tax due of $15.88 and salary due Francis N. Decker of $2,147.93. The net worth of the business was $37,953.78, of which $28,465.33 was the balance of petitioner's capital account, and $9,488.45 was the balance of Francis N. Decker's capital account. 3. In 1937, the oldest of petitioner's five children was 15 years old, and the youngest was 2 years old. Petitioner's wife devoted all of her time to the care of her children and home. No domestic help was employed. Petitioner's wife did all of the housework. From 1937 through 1940, petitioner's wife assisted him at home by making up the partnership bills and preparing the monthly statements, and sending out some advertising material of the partnership. She had been employed as a billing clerk prior to her marriage. She did this work on Sundays and during evenings. She made up the bills from the shop slips which petitioner brought home. Petitioner's wife performed the above services for the partnership without compensation. There is no record of the number of hours devoted to such work. After 1940, petitioner's wife did not do any of the above described work for the partnership or for *31 her husband. The partnership hired someone to do this work at the firm's office at the rate of 50 cents an hour. 4. At some time in 1940, petitioner discussed with his brother his proposal that his wife become a member of the partnership. He proposed that the interest of Francis N. Decker would be increased to 33 1/3 percent, and that petitioner and his wife should each have a 33 1/3 percent interest. The proposal was acceptable to Francis N. Decker. Accordingly, on January 2, 1941, a new partnership agreement was executed, which was substantially the same as the 1937 partnership agreement, except for the provisions for rearranging the interests from 75 and 25 percent to 33 1/3 percent. The agreement was executed by petitioner, his wife, and his brother in triplicate, each retaining one copy. It was agreed that petitioner, Francis N. Decker, and Elizabeth R. Decker should each contribute 33 1/3 percent of the capital, and should share the profits and losses on the same basis. The firm name was to be the same. The partnership could be terminated on 60 days notice. In the event any partner wished to dispose of his interest, or terminate the partnership, he or she had first to offer *32 such interest to the other partner or partners at the then worth or book value of the interest. The partnership agreement was prepared at petitioner's suggestion. His wife was not consulted about the terms of the agreement. Petitioner's wife did not contribute any capital originating with herself to the partnership under the 1941 agreement. No new capital was contributed to the business by anyone. Petitioner determined that the contribution of each person should be $12,000. A capital account was opened in the existing books in the name of petitioner's wife. Petitioner transferred $12,000 out of his capital account to open the capital account in his wife's name. The capital account of Francis N. Decker had a balance of $9,488.45 at the end of 1940. He had salary payable to him in the sum of $2,511.55 transferred to his capital account, after which the balance of his capital account was $12,000. Petitioner transferred $4,465.33 from his capital account to his loan account with the firm, so that, thereafter, the partnership indebtedness to him was increased by the above amount. After the transfers to his wife's capital account and to the loan account, the balance in petitioner's *33 capital account was $12,000. Petitioner's attorney attempted to file with the county clerk the 1941 partnership agreement, but the clerk advised that he could not accept the new certificate of co-partnership under the Michigan law relating to partnerships, which at the time did not allow a wife to engage in business as a partner with her husband. Accordingly, the original certificate of co-partnership filed in 1937 remained of record. No bill of sale was executed by petitioner to his wife. A certificate of doing business under an assumed name was not filed. Petitioner, in his Federal gift tax return for 1941, reported a gift to his wife, among other gifts, of a one-third interest in a partnership known as "Precision Boring Co." of Detroit at a value of $12,000. No gift tax was payable under the return. 5. After the execution of the 1941 partnership agreement, and during 1941, petitioner's brother continued to conduct the business of Precision Boring Co. in exactly the same manner as before. Petitioner's wife did not perform any services in or for the business during 1941; she did not make up any bills or invoices. Petitioner's interest in and his services to the business continued *34 exactly as before. He continued to loan money to the business and look after the books. Creditors and customers were not notified that petitioner's wife was a partner. No change in the authority to sign the firm's checks was made. During 1941, between 10 and 15 machine operators were employed for a total compensation of about $36,000. A billing clerk was employed at the office at the rate of 50 cents per hour. During 1941, petitioner's wife continued to devote all of her time to the care of her five children and her home without the aid of any domestic help. During 1941, petitioner's wife was informed that the old Swiss jig borer would be sold and replaced by new machinery. Petitioner and his brother at all times, and during 1941, had full control and sole authority to decide whether any earnings of the business were to be distributed to the partners, and they alone made decisions about distributing earnings or retaining them. 6. The gross receipts of the Precision Boring Co. for 1941 were $112,125.33, and net distributable income was $72,600.57, (of which the shares of the respective partners was $24,200.19). As of December 31, 1941, the gross assets of the business were *35 $127,078.82, consisting of cash and accounts receivable, $31,364.64; machinery, tools, and fixtures, $34,511.98; land and buildings, $61,202.20. Liabilities of $18,478.25 included a contract payable account on property $10,058.40, and salary due F. N. Decker $8,066.74. Total capital was $108,600.57. None of the 1941 earnings was distributed to the partners, but the capital accounts of each were credited with $24,200.19, so that the balance of each account at the end of 1941 was $36,200.19. 7. During 1942, the capital account of petitioner's wife was reduced by the total amount of $28,821.50, of which $7,318.55 was used to pay the income tax reported on her separate return for 1941, and $21,506.95 was deposited in her separate savings account. On December 30, 1942, petitioner's wife withdrew $20,000 from her savings account and paid that sum to a vendor of the stock of the corporation, Hotchkiss Tool & Enginering Company. This payment related to the arrangements which petitioner had made in March 1941, and to which he referred in the 1941 gift tax return. 8. Petitioner's wife filed a separate income tax return for 1941, in which she reported total income of $24,370.63, which included *36 $24,200.19 of the 1941 earnings of Precision Boring Co. In her return she gave as her occupation, "Housewife." Respondent determined that petitioner's wife was not a bona fide member of the partnership in 1941. After making adjustments in the income of the partnership, the amount added to petitioner's income as a result of the above determination was $24,475.46. 9. Petitioner has never contributed to the partnership any funds belonging to his wife, nor used any of her funds in the partnership business, or for his own purposes. 10. Petitioner's wife was not a bona fide member of the partnership, Precision Boring Co., in 1941. She did not contribute any capital originating with herself to the partnership, in 1941 or before, or render any services to the business in 1941. 11. The partnership created in 1937 and existing in 1940, consisting only of petitioner and his brother, continued in existence during 1941, and the formal admission of petitioner's wife to the partnership under the agreement of January 2, 1941, did not effect any real change in the original, existing partnership for purposes of petitioner's liability for Federal income tax upon the earnings of the business. *37 The petitioner and his brother did not intend to carry on the business in question in partnership with petitioner's wife, and they did not do so. Rather, the petitioner and his brother intended to and did continue to conduct the business in question by themselves only as a partnership. Petitioner's purported gift of an undivided interest in Precision Boring Co. in 1941 was not a valid and completed transfer of an interest in property in that no control was given over any separate and severable property in 1941. Petitioner intended that money representing such undivided interest was to remain in the business, and his wife so understood. She could not dispose of that interest freely, but had to first offer it to her husband or brother-in-law, or both. Petitioner and his brother retained complete control over the disposition of the earnings, the retention or distribution thereof. Petitioner's wife was not a bona fide partner in 1941. Opinion Respondent has determined that petitioner is taxable on income of a partnership which, in part, has been attributed to petitioner's wife. The determination has been made under section 22(a) of the Internal Revenue Code *38 . Petitioner rests his contention that onethird of the 1941 income of the partnership is taxable to his wife wholly upon his alleged gift to her in January 1941 of an undivided part of his interest in the partnership which was created in 1937. It is his contention that he made a complete and absolute transfer to his wife by gift of an interest in the business which existed; that as a result of such gift his wife contributed capital to the business; and that income thereafter accruing to such interest was the income of his wife. [1] He relied upon J. D. Johnston, Jr., 3 T.C. 799; M. W. Smith, Jr., 3 T.C. 894; Robert P. Scherer, 3 T.C. 776; Felix Zukaitis, 3 T.C. 814. Petitioner also places emphasis on the nature of the business in question, arguing that the income was produced by capital, meaning machines, rather than personal services. It is believed that petitioner, under this argument, had reference to the line of cases relating to personal service businesses, alleged to be distinguishable from the business involved here, such as Mead v. Commissioner, 131 Fed. (2d) 323; Earp v. Jones, 131 Fed. (2d) 292; *39 and Schroder v. Commissioner, 134 Fed. (2d) 346, although he does not refer to those cases on brief. Petitioner relied also upon Tower v. Commissioner, 148 Fed. (2d) 388, reversed, Commissioner v. Tower, 327 U.S. 280. Respondent relied upon Burnet v. Leininger, 285 U.S. 136.; Carl P. Munter, 5 T.C. 39; and Camiel Thorrez, 5 T.C. 60; aff'd., 155 Fed. (2d) 791. The facts of this case closely resemble the facts in James L. Pritchard, et al., 7 T.C. No. 144 (promulgated November 29, 1946). Here, as there, respondent recognizes for income tax purposes an existing partnership in which only petitioner and his brother were members; and he takes the position that the formal arrangements which were made on January 2, 1941, to establish a new partnership in which petitioner's wife was admitted as a partner were not effective to relieve petitioner from income tax upon *40 two-thirds of the earnings of the business. Petitioner, on brief, anticipated respondent's argument that no capital was contributed to the business in question by petitioner's wife. The Supreme Court in the Tower case has stated the circumstances under which a husband and wife may become partners for tax, as for other purposes. Where the wife does not perform vital additional services and does not substantially contribute to the control and management of the business, she must at least invest in the business capital originating with herself as a prerequisite of recognition of any ownership by the wife of any part of the partnership earnings for income tax purposes. Here, the evidence is clear that petitioner's wife did not make the required investment of her own capital in the business. Rather, her alleged ownership of an interest in the partnership was brought about merely by "the simple expedient of drawing up papers" and the making of bookkeeping entries transferring part of petitioner's capital account to a new capital account in his wife's name on the books of the firm. With respect to the formal making of a gift, petitioner did even less than ordinarily is done, relying chiefly *41 upon a Federal gift tax return and the bookkeeping entries as evidence of a gift. There was never any actual division of the assets of the existing firm and no time at which petitioner's wife could have exercised any independent control over her alleged interest in them. See Jacob De Korse, 5 T.C. 94; aff'd., 158 Fed. (2d) 801 (November 18, 1946); Camiel Thorrez, supra; Fred W. Ewing, 5 T.C. 1020; aff'd, 157 Fed. (2d) 679 (November 15, 1946); Abe Schreiber, 6 T.C. 707; Paul G. Greene, 7 T.C. 142; Lowry et al. v. Commissioner, 154 Fed. (2d) 448. The Precision Boring Co. expanded its productive capacity in 1941, constructing a building and purchasing machines, and for such acquisitions new capital was needed. Indeed, the situation was such that petitioner and his brother might well have considered inviting a new partner into the firm to carry on the business in partnership as a means of procuring additional capital. Despite the situation, there was not any addition to the firm's capital as a result of the formalities of making petitioner's wife a member of the partnership. There *42 is no evidence that petitioner and his wife really intended to carry on a business as a partnership. Commissioner v. Tower, supra; John Lang, 7 T.C. 6. When consideration is given to all of the facts, the conclusion that the agreement of January 2, 1941, brought about no changes whatsoever in the conduct of the existing business and the control over the use of its earnings is inescapable. In the light of the facts, the alleged partnership relationship was unreal, with respect to petitioner and his wife. The arrangement did no more than to provide a basis for reallocating petioner's income between himself and his wife. Under the arrangement, the wife appeared to have received at the end of one year a return of $24,200 upon an alleged investment of $12,000 in a year when the firm was making substantial capital expenditures. The facts refute the contention. The question is controlled by Commissioner v. Tower, supra. Respondent's determination is sustained. Decision will be entered for the respondent. Footnotes
1. The briefs in this case were submitted prior to February 25, 1946, the date of the Supreme Court decisions of Commission v. Tower, 327 U.S. 280; and Lusthaus v. Commissioner, 327 U.S. 293↩.