CAMIEL THORREZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOSEPH MICHNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WALTER MICHNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD A. FORNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3250–3253. Promulgated May 21, 1945.

*J. Adrian Rosenburg, Esq.,* and *Everett M. Hawley, Jr., Esq.,* for the petitioners.

*Melvin S. Huffaker, Esq.,* for the respondent.

66

OPINION.

SMITH, *Judge*: Petitioners' contentions are that after the effective date of the execution of the partnership agreement of January 3, 1941, the business of Michner Plating Co. was conducted as a partnership consisting of the 14 members, including themselves, their wives, and minor children. They contend that their wives and children are entitled to full membership in the partnership because of their contributions of undivided interests in the assets of the business which petitioners allegedly transferred to them as bona fide gifts in anticipation of the organization of the partnership. The respondent has determined that petitioners themselves were the only partners in the business and that they are taxable individually on their proportionate share of the profits.

We think that the respondent's determination must be sustained, evidence shows plainly that the purpose of petitioners was not to make completed gifts of severable interests in the assets of the business to the wives and children for their own use. The gifts, if such they could be called, were so restricted in their use and enjoyment that in effect all that the wives and children could ever receive was shares of the distributable profits of the business. They could not dispose of their alleged interests in the assets without first offering them to the other partners at their appraised value and they could not dispose of them to any outsider except upon approval of the partners

Thus the partners were in a position to prevent any disposition of such interests by refusing to purchase them themselves and refusing to approve a sale to any outsider. It is not clear just what was to become of the interest of any deceased partner, since their executors were to be under the same restraint in disposing of the interests as were the partners themselves.

Although the assets of the business consisted of real estate of considerable value, there was no conveyance by title of any interest in the real estate to any of the wives and children.

Under the terms of the so-called partnership agreement of January 3, 1941, petitioners were to continue in complete control of the business. The wives and children were to have no voice in its management or policies and could not bind the partnership by any of their acts. Their sole function was to receive whatever profits of the business might be determined by petitioners to be distributable to them.

In order to have a valid business partnership there must be a contribution by all the members of either services or capital. *Meehan* v. *Valentine*, 145 Fed. (2d) 611; *Karrick* v. *Hannaman*, 168 U. S. 328. Except for one of the wives, Lottie Michner, none of the wives or children performed any services of note. She had worked at the business regularly from its beginning in 1936. She also furnished one-half of the $2,000 capital originally contributed by her husband, Joseph Michner. It is not clear whether she gave this money to her husband, or loaned it to him, or paid it in to the company on her own behalf. On being asked if she loaned him the money, Joseph Michner testified: "She didn't loan me the thousand dollars; she just gave it to me. * * * she had idea that some day she was going to be partner."

The evidence is that Lottie Michner was paid regular compensation for all of her services on behalf of the partnership, and no claim is made that her pay was not commensurate with the value of such services. She had no part in the management of the business.

The evidence shows further that the admission of Lottie's son, Walter Michner, as a partner, for a consideration much less than the value of his one-fourth interest, was at her insistence and, for all that is shown, may have exhausted whatever claim she had to a proprietary interest in the business. It is significant that later the other partners refused to consent to her coming in as an equal partner with them. Joseph Michner testified "they let me take my wife in if I let them take their wives in, and family."

If the business of Michner Plating Co. had been operated by Joseph Michner as a sole proprietorship and he had undertaken to make his wife an equal partner, claim for recognition of the partnership might be made on the reasoning of cases like *Felix Zukaitis*, 3 T. C. 814, but that is not the situation. Lottie Michner's claim to membership has

the same basis as that of the other wives and children; that is, the alleged gift to her of an undivided interest in the partnership assets and the partnership agreement itself. There was never any recognition by the partners, and in fact there was a denial by them, that she had any other proprietary rights or interest in the business.

We do not think it can be said that the wives and children contributed any capital of their own. The alleged gifts to them by petitioners of undivided interests in the assets fail for lack of intention on the part of petitioners to make completed gifts to them of such interests. The real intention of the petitioners was to create a partnership through which the profits of the business might be divided among themselves and their wives and children so as to reduce taxes. We think that they failed both in creating a bona fide business partnership and in making the completed gifts upon which the partnership was dependent. See *Burnet* v. *Leininger*, 285 U. S. 136; *Schroder* v. *Commissioner*, 134 Fed. (2d) 346; *Mead* v. *Commissioner*, 131 Fed. (2d) 325; certiorari denied, 318 U. S. 777; *Earp* v. *Jones*, 131 Fed. (2d) 292; certiorari denied, 318 U. S. 764; *Tinkoff* v. *Commissioner*, 120 Fed. (2d) 564; certiorari denied, 314 U. S. 581; *A. L. Lusthaus*, 3 T. C. 540; affd. (C. C. A., 3d Cir.), 149 Fed. (2d) 232; *Frank J. Lorenz*, 3 T. C. 746; affd. (C. C. A., 6th Cir.), 148 Fed. (2d) 527; *Francis Doll*, 2 T. C. 276; affd. (C. C. A., 8th Cir.), 149 Fed. (2d) 239.

We think that the respondent has correctly determined that petitioners are the real partners in Michner Plating Co. and that they are taxable on all of its earnings for the year involved.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

ARUNDELL and LEECH, *JJ.*, dissent.

————

MELLOTT, *J.*, concurring: Notwithstanding the many cases which have been decided involving claimed family partnerships, the line of demarcation between those in which such status has been recognized for tax purposes and those in which it has not been recognized is not clear. In the absence of pronouncement by the Supreme Court upon the subject, the judges of the various Circuit Courts of Appeal and of this Court have striven to find the correct rule. The result has not been entirely satisfactory, as is indicated by the divided opinion in this case. At the risk of increasing, rather than dispelling the fog of uncertainty, I respectfully state some of my views.

Under the Revenue Act of 1917 tax was imposed directly upon the partnership. (40 Stat. 300, 303.) However, since 1918 the revenue

acts[1] have recognized the basic principle of partnership law: That a partnership is not, in any true sense, a separate entity, but, paraphrasing the language of Chancellor Kent, is the result of a contract of two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the losses in certain proportions. Cf. *Meehan* v. *Valentine*, 145 U. S. 611. Thus since 1918 each of the revenue acts has required what is usually spoken of as an "information" return and since 1921 each act has stated that "individuals carrying on business in partnership shall be liable for income tax only in their individual capacity."

Under the Uniform Partnership Law, adopted in many of the states, business is a very comprehensive term, including "every trade, occupation or profession." (See, e. g., New York Partnership Law, Consolidated Laws, ch. 39.) Without pausing to cite authorities, it may be stated that this is the view which has generally been taken of a partnership under the revenue laws.

In most states a partnership may now exist among members of a family, including husband and wife, although at common law a husband and wife could not enter into such a relationship with each other. An infant's contract of partnership is voidable; and if he affirms after attaining majority he will be bound. Whether one of tender years, purporting to have signed such a contract personally rather than through a guardian, as seems to have been the situation in the cases now before us, should not for that reason be considered to be a partner, may be passed. It is a circumstance, however, entitled to some consideration in determining the basic question, viz: Were all of the alleged partners "individuals carrying on business in partnership?"

One of the early, yet comparatively recent, cases decided by the Supreme Court is *Burnet* v. *Leininger*, 285 U. S. 136, which has been cited many times. In that case a written agreement confirmatory of a preexisting oral contract was entered into between the taxpayer and his wife, wherein it was acknowledged that she had been and was a full equal partner with him in his one-half interest in the Eagle Laundry Co., entitled to share equally with him in the profits and obligated to bear equally any losses. The wife took no part in the management of the business and made no contribution to its capital.

In response to a contention by the taxpayer that the assignment to his wife was of one-half of the "corpus" of his interest and that this "corpus" produced the income in question,[2] the Court said:

---

[1] Sec. 218 (a), Revenue Acts of 1921, 1924, 1926; sec. 118, Revenue Acts of 1928, 1932, 1934, 1936, and 1938 and the Internal Revenue Code.

[2] See in this connection *Blair* v. *Commissioner*, 300 U. S. 5, and *Harrison* v. *Schaffner*, 312 U. S. 579, subsequently decided.

The characterization does not aid the contention. That which produced the income *was not Mr. Leininger's individual interest in the firm, but the firm enterprise itself,* that is, *the capital of the firm and the labor and skill of its members employed in combination through the partnership relation in the conduct of the partnership business.* There was no transfer of the corpus of the partnership property to a new firm with a consequent readjustment of rights in that property and management. If it be assumed that Mrs. Leininger became the beneficial owner of one-half of the income which her husband received from the firm enterprise, it is still true that he, and not she, was the member of the firm and that she had only a derivative interest. [Emphasis supplied.]

In some of the cases decided since the *Leininger* case the emphasis has been placed solely upon the portion quoted above following the portion which I have taken the liberty of emphasizing. Thus the case has sometimes been construed to apply only to the situation adequately dealt with by the Court previously in *Lucas* v. *Earl*, 281 U. S. 111, and discussed by it in the next subdivision of its opinion. Without expressing disagreement with this view, it seems to be entirely proper to consider in each case not only whether an assignment of an interest in the business had been made, but also whether the assignee had actually engaged in a firm enterprise—i. e., combined with others in the employment of the capital of the firm and the labor and skill of its members in the conduct of the partnership business. Under the present facts it is clear that the wives and children (with the exception of the one or two who worked in the business) furnished neither labor nor skill and that a substantial part of the income resulted solely from the labor and skill of their husbands and fathers. This brings us, then, to one of the tests which has sometimes been applied and which for want of a better term may be referred to as "personal service."

Numerous cases have been decided in which the existence of a partnership for income tax purposes has been denied because the income was derived, largely, if not exclusively, from the personal earnings of the husband. In this category are attorney fees (*Tinkoff* v. *Commissioner*, 120 Fed. (2d) 564); engineers' fees (*Schroder* v. *Commissioner*, 134 Fed. (2d) 346); income from general insurance and real estate business (*Mead* v. *Commissioner*, 131 Fed. (2d) 323); commissions for writing insurance (*Earp* v. *Jones*, 131 Fed. (2d) 292); and commissions for selling shoes to dealers (*Francis Doll*, 2 T. C. 276; affd., 149 Fed. (2d) 239 (C. C. A., 8th Cir.). The difficulty is not so much in recognizing and applying this rule in appropriate cases. (But see *Humphreys* v. *Commissioner*, 88 Fed. (2d) 430.) The fallacy lies in adopting it as a postulate or major premise from which to start. In other words, the fact that the particular income under consideration may not be from practicing a profes-

sion or of the type mentioned in the cited cases, should not be accepted as a segment of a mold in which all partnership cases may be cast.

To illustrate the thought which I have endeavored to bring out: Assume, e. g., a young graduate dentist, unable, for lack of finances, to establish himself in business. Recently married to one who has $10,000, the amount is put into fixtures and equipment under an arrangement to divide the profits. Shall it be said that no partnership existed because the income was derived solely from extracting and treating teeth? The answer may be suggested by the reasoning of the court in *Humphreys* v. *Commissioner*, *supra;* but cf. *Richardson* v. *Helvering*, 80 Fed. (2d) 548 (estate tax). Whether it is correct is not now before us and is important only in examining one of the facets of the problem. Another, although not precisely like it, is the more familiar case where capital is essential (as in the plating business, which we have before us) but the skill of the guiding spirit is obviously the source of much of the income. The facts need not be repeated; but it is clear that capital played a less important part in the production of income than the skill of the taxpayers.

Whether a more nearly correct answer to the problem posed could be reached by applying the rationale of *Max German*, 2 T. C. 474, 483, *et seq.*, has not been suggested by either party. In that case it was obvious the wife had made a substantial contribution to the capital of the business. The record did not contain facts from which the profits of the business allocable to the wife could be determined with exactness. Nevertheless we felt it incumbent upon us "to determine the extent thereof as best we may on such facts as we do have." We concluded that an allocation of 75 percent to the husband and 25 percent to the wife was reasonable and proper. Perhaps some such allocation could be made in the instant cases although it would of necessity be a mere approximation. Inferentially the Circuit Court of Appeals for the Eighth Circuit suggested such an allocation in the *Doll* case, *supra*, pointing out that the criterion for determining income tax liability is the "possession of attributes of ownership by the taxpayer." However, the petitioners should have assumed their burden of showing how much of the income was derived from capital and how much from the labor and skill of the active partners; but they have made no effort to do so.

Another segment of the mold, which some of the decided cases may tend to overemphasize, is whether a gift has actually been made by the one who established or breathed life into the business—usually, as in the cases at bar, the husband and father. Thus in the nine cases reported in the last bound volume of our reports, 3 T. C., which will be referred to seriatim, as well as in cases subsequently decided, including the present one, the circumstances surrounding the making of the

alleged gifts have been referred to at length. In the *Tower* case[3] it was held that there had been no unconditional gift by the husband to the wife of shares of stock in a corporation largely owned by him. The transfer had been conditioned upon the wife placing the corporate assets, which the shares represented, in a new partnership to be established by the husband, his wife and an individual who had owned 10 percent of the stock. The Circuit Court of Appeals for the Sixth Circuit, one judge dissenting, held that the gift was "both valid and complete" and that there was "no evidence upon which to base a conclusion that either the gift of corporate shares to the wife, or the organization of the partnership, was unreal and a mere artifice." Accordingly it reversed our holding that the income of the business was taxable in toto to the husband. (*Tower* v. *Commissioner*, 148 Fed (2d) 388.

The next case was the *Lusthaus* case,[4] in which the husband undertook to vest one-half of his interest in two furniture stores in his wife, approximately half through a gift and half by purchase, the purchase being evidenced by a promissory note. Citing the *Doll*, *Tower*, and *Schroder* cases, *supra*, it was held that, even though the arrangement constituted a valid partnership under the laws of the state of domicile, it should not be given recognition for Federal income tax purposes. The Circuit Court of Appeals for the Third Circuit affirmed, although Judge Fake filed a vigorous dissent (*Lusthaus* v. *Commissioner*, 149 Fed. (2d) 232, basing its affirmance partially upon *Dobson* v. *Commissioner*, 320 U. S. 489. In answer to the taxpayer's assertion that error had been committed by the Tax Court, the court pointed out that the cases[5] "hold that the status must be genuine, with a change in economic interest." It held that the circumstances surrounding the alleged gift of $50,000 could be construed as indicating that the taxpayer "had not divested himself irrevocably of the subject matter of the gift." Whether the *Tower* and the *Lusthaus* decisions are in conflict with each other is not within our province and no opinion on that subject need be expressed.

In the *Lowry* case[6] the taxpayers (Lowry and Sligh) transferred to their wives a portion of the stock of a furniture manufacturing company, most of the stock of which was owned by them. The corporation was then dissolved and an agreement was executed by the four, the husbands being designated general partners and their wives limited partners, the property of the corporation being transferred to the partnership. It was held that the wives had not received from

---

[3] *Francis E. Tower*, 3 T. C. 396.
[4] *A. L. Lusthaus*, 3 T. C. 540.
[5] *Gregory* v. *Helvering*, 293 U. S. 465 ; *Helvering* v. *Clifford*, 309 U. S. 331 ; *Higgins* v. *Smith*, 308 U. S. 473 ; and *Griffiths* v. *Commissioner*, 308 U. S. 355.
[6] *O. Wm. Lowry*, 3 T. C. 730 (on appeal. C. C. A., 6th Cir.).

their respective husbands "a complete economic interest in the portions of the property which purportedly went to them out of the corporation, and from the wives into the partnership." One of the circumstances relied upon was that the gifts had been made with full understanding that a plan devised by the husbands would be carried out which restricted the wives' interests and required them to be limited partners rather than general partners, thereby preventing them from becoming absolute owners.

In the *Lorenz* case [7] the taxpayer undertook to make a gift to his wife of a 50 percent interest in the tangible assets of an equipment company. It was pointed out that the "petitioner had not divested himself * * * of the chief attribute of ownership of interests in property, namely, control over income." Many of the outstanding cases were analyzed and it was held that the facts failed to show that the wife exercised any control over the subject matter of the alleged gift to her. The Circuit Court of Appeals for the Sixth Circuit affirmed *per curiam*, partially on the authority of *Dobson* v. *Commissioner*, 320 U. S. 489.

In the *Scherer* case [8] the owner of a profitable manufacturing business transferred to his wife, individually and as trustee for several named children, five-sixths of his interest. Although much of the success of the business was attributable to his ability, it was held, following *Richard H. Oakley*, 24 B. T. A. 1082, *Justin Potter*, 47 B. T. A. 607, and other cases, including *J. D. Johnston, Jr.*, 3 T. C. 799, simultaneously promulgated, that the husband and father was engaged in a mercantile or manufacturing business and that he had made valid and completed gifts to his wife, individually and as trustee.

Without criticising or attempting to justify the soundness of the conclusion reached, this circumstance may be alluded to. The Commissioner had determined very substantial deficiencies in gift tax in connection with the gifts which had been made and one of the issues submitted for determination was the value of the property transferred. In the income tax case, submitted contemporaneously, he was contending not that valid gifts had not been made, but that the income was taxable to the petitioner under the rationale of the *Clifford* case, *supra* (footnote 5). The inconsistency of the respondent's contentions in the gift tax case and in the income tax case furnished at least a modicum of justification for adopting the postulate that valid completed gifts had been made, especially in view of the fact that he was not contending otherwise.

In the *Johnston* case [9] the wife gave her husband an unsecured non-interest-bearing demand note, ostensibly in payment for one-half of

[7] *Frank J. Lorenz*, 3 T. C. 746.
[8] *Robert P. Scherer*, 3 T. C. 776.
[9] *J. D. Johnston, Jr.*, 3 T. C. 799.

his one-half interest in a partnership. A new partnership was then formed, which took over all the assets of the old and assumed its liabilities. The price paid by the wife was probably inadequate; but that was thought to be neutral, since the excess constituted a gift to her by her husband. It was held that the Commissioner erred in including all of the income from the 50 percent interest in the partnership in the taxpayer's income.

In the *Zukaitis* case [10] petitioner and his wife, both before and after marriage, had jointly conducted a merchandising business. The business was carried on in the name of the husband. The parties executed a partnership agreement, the purpose of which was to make the wife an equal partner with the husband. It was held that, notwithstanding the fact husband and wife partnerships were not fully recognized under the laws of the state of domicile, nevertheless the wife, after the execution of the agreement, was entitled to one-half of the earnings of the business and that the husband was taxable only on the other half.

In the *Smith* case [11] petitioner executed a deed of gift to an undivided one-half interest in his lumber business. By accepting the gift the wife assumed equal and joint liability with her husband for the payment of all his debts and obligations. They then entered into a partnership agreement for the purpose of engaging in the lumber business. The deed of gift was held to be adequate to pass title to an undivided one-half of the assets of the business and the husband was held to be taxable upon only one-half of the income derived from its operation.

In the *Argo* case [12] the husband, an electrical engineer, undertook, by an oral agreement with his wife and through instructions to his bookkeeper, to divide the assets of a corporation, which had been distributed to him as its sole stockholder, among the members of the family. Decision that petitioner was taxable upon all of the income, notwithstanding the fact that he may have made bona fide gifts to his wife and children, was predicated largely upon the fact that the earnings of the business "were due mainly, though not entirely, to the personal activities and abilities of the petitioner as an electrical engineer under the principle applied in *Earp* v. *Jones*, * * *" cited *supra*, and other cases.

The conclusion reached here may be contrary to that reached in the *Scherer* case; but it does not seem to be contrary to any of the other cases. The *Argo* case definitely supports the present decision. Whether the *Scherer* case and the other cases mentioned by Judge Black in his dissenting opinion "set a pattern" for all future cases, is

[10] *Felix Zukaitis*, 3 T. C. 814.

[11] *M. W. Smith, Jr.*, 3 T. C. 894.

[12] *M. M. Argo*, 3 T. C. 1120 (on appeal, C. C. A., 5th Cir.).

debatable. *Stare decisis*, as the Supreme Court pointed out in *Helvering* v. *Hallock*, 309 U. S. 106, "is a principle of policy and not a mechanical formula for adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience." If, therefore, the *Scherer* case can be construed as laying down a principle of *law* to be applied in resolving the difficult problem of *fact* arising in family partnership cases—which is doubtful—then perhaps it should be overruled. I view it, however, purely as a decision upon its facts. In that view, the possibility that it may have been contrary to the basic principle of *Lucas* v. *Earl* need not now disturb us.

Some of my associates, for whose opinions I have the highest regard, seem to regard the cases as establishing the principle that if gifts of capital are made, followed by the execution of a document labeled a partnership agreement, the income is thereafter divisible unless the business is wholly "personal service." That, it seems to me, is an unsound approach. The question always is: "Were the individuals actually engaged in *carrying on business* in partnership?" It can not be answered in every instance simply by looking at the capital investment. Take for example the minor daughter of the Michner's, Elsie, in the case at bar. She was given an undivided one-third of the 25 percent interest of her father in the assets of the firm, the total value of which, as set out in the dissenting opinion of Judge Disney, was $109,464. Thus her interest in the assets was $9,122. During the taxable year she received $13,698.47. It taxes the credulity of the triers of facts to believe that Elsie's capital, donated to her by her father, earned 150 percent per annum. It is far more reasonable to assume, as I think the facts clearly indicate, that a substantial portion of the amount resulted from the labor and skill of her father. In that view, *Lucas* v. *Earl*, *supra*, requires that the major portion of the income be taxed to him.

My dissenting brethren are correct in their view that a citizen has a clear right to make a gift of property to his wife and children and to engage with them in "carrying on business in partnership." His motive, even, is unimportant. But, while a taxpayer may assign capital to members of his family and permit them to have *its* fruits, he may not, through that guise, assign to them, tax-free, the income resulting from his own labor, skill, and industry. That, I am convinced by the record, is what occurred in the instant case. The suggestion that the taxpayers here, under the rationale of *Helvering* v. *Taylor*, 293 U. S. 507, may cast upon respondent the burden of proving how much of the income resulted from the capital investments and how much resulted from the labor and skill of the taxpayers is not sound. Respondent

determined that the income was earned by the taxpayers. They have not proved otherwise. I therefore concur in the result reached by the majority.

———

OPPER, *J.*, concurring: If we are not to be misled by mere terminology, it seems to me the petitioners here did no more than was done by the taxpayer with equal lack of success in *Burnet* v. *Leininger*, 285 U. S. 136. There the business conducted was the operation of a laundry, and I think we may safely assume that the partnership assets included a physical plant. The assignment relied upon was of a part of the taxpayer's "interest in the partnership," from which it was contended "that the assignment to his wife was of one-half of the 'corpus' of his interest and that this 'corpus' produced the income in question." As to this the Supreme Court commented:

* * * The characterization does not aid the contention. That which produced the income was not Mr. Leininger's individual interest in the firm, but the firm enterprise itself, that is, the capital of the firm and the labor and skill of its members employed in combination through the partnership relation in the conduct of the partnership business. * * *

In this case the agreement of the parties provides:

* * * It is further agreed that if any of the parties hereto [petitioners] should make such transfers of portions of their partnership interests as has been heretofore agreed upon, such transfers shall be made with the understanding and subject to the condition that the active control, operation and management of the said partnership shall remain in the parties hereto and although such transfers shall constitute outright transfers and unconditional transfers of interests in the assets, income and liabilities of said co-partnership, such transfers shall only constitute transfers of interest in the assets, income and liabilities in said co-partnership, but shall not constitute transfers of shares in the control, operation or management of the partnership * * *.

That envisages more of an agreement to exclude the wives and children from the partnership rather than one treating them as "individuals carrying on business in partnership." Sec. 181, I. R. C.

It is difficult for me to see that each of these petitioners has done any more by the formal agreement with his copartners than Leininger could and did do without it. Very probably the wife acquired rights under the agreement in the *Leininger* case which were enforceable against her husband as to both "corpus" and income,[1] as I have no doubt that the wives and children have secured here. But they are derivative rights, and do not solve the familiar problem exemplified by *Lucas* v. *Earl*, 281 U. S. 111, of the true source of the income, and hence

[1] "* * * the agreement * * * cannot * * * have amounted to more than an equitable assignment of one-half of what her husband should receive from the partnership * * *." *Burnet* v. *Leininger, supra.*
"EQUITABLE ASSIGNMENT. An assignment which * * * will be recognized and enforced in equity." Black's Law Dictionary, 3d Ed.

of whose income it was for purposes of imposing the tax burden. *Doll* v. *Commissioner* (C. C. A., 8th Cir.), 149 Fed. (2d) 239.

VAN FOSSAN, *J.*, dissenting: Convinced as I am that the evidence in the instant cases demonstrates that valid, legal gifts of property were made; that under the law a minor may enter into a partnership relationship; that a bona fide partnership was contracted among the parties, each contributing capital; that this is not a case of mere assignment of income; and believing that, despite the need for revenue in the form of taxes, certain basic principles of partnership law still stand, I respectfully dissent.

BLACK, *J.*, dissenting: In considering an issue of the kind which we have to decide in the instant case, it seems to me that there are certain fundamentals which we might well take into account. Among these fundamentals, as I view them, are: We live in a free country where a man can do with his property as he pleases so long as it is done in pursuance of a lawful purpose—he can either give it away or he can keep it. If he decides to give away part of his property, he may lawfully give it to his wife and children, the most natural objects of his bounty.

The majority opinion in the instant case is written around the premise that petitioners did not make completed gifts of part of their interests in Michner Plating Co. to their respective wives and children. It seems to me that, in the light of the undisputed facts which are in the record, this holding of the majority is altogether untenable. Whether a completed gift is made in a given case of course depends upon the facts which are present, just the same as most other tax cases depend upon their facts. But I wish to emphasize in this dissent that whether or not a gift has been made is not a pure question of fact, such as what is the value of a given piece of property, or whether a debt became worthless in a certain year, or whether salaries paid officers and employees by a corporation are reasonable. These latter are, as I view them, pure questions of fact. But whether a gift has been made involves questions of substantive law as well as of fact.

A well known and leading case which discusses the elements necessary to a completed gift is *Edson* v. *Lucas*, 40 Fed. (2d) 398. In holding that there were no completed gifts in the instant case, I fear the majority opinion has given scant attention to the principles of law laid down by the court in *Edson* v. *Lucas*.

What are the facts in the instant case which show that petitioners did make valid and completed gifts to their respective wives and children? First of all, on January 2, 1941, the four petitioners herein exe-

cuted a formal written agreement in which they proposed to give their respective wives and children certain proportions of their interests in the Michner Plating Co., which was then being operated as a partnership by the four individuals who are petitioners here. This agreement is in the record and, while it is entirely too lengthy to incorporate in full in this dissenting opinion, I think it is correct to say that it is a well drawn and well considered legal document and, in connection with the written partnership agreement which was executed on the following day, fully accomplished the purposes for which it was intended. See *Commissioner* v. *Tower*, 148 Fed. (2d) 388. The partnership agreement which was entered into by petitioners and their wives and children on January 3, 1941, is in the record. It is a well integrated and well drawn partnership agreement, in my judgment. The first paragraph of the agreement states the nature of the partnership and gives the names of its members and provides in part as follows:

Now, THEREFORE, all the aforesaid parties hereby enter into a co-partnership agreement for the purpose of carrying on a general metal plating business in the City of Jackson aforesaid under the style and firm name of Michner Plating Company, being a successor to the co-partnership heretofore carried on under that style and firm name by the parties of the first part herein named and the names of the members of this co-partnership and their undivided percentage interests are as follows: [Here are set out the names of the respective partners and their proportionate interests.]

Paragraph 2 of the agreement provides for the term of the partnership and states:

The partnership as herein formed shall commence on the 4th day of January, A. D. 1941, and shall continue for a period of twenty (20) years or for such lesser or greater period as the parties hereto may specifically agree upon at some later date.

Paragraph 5 of the agreement states the capital arrangement of the partnership as follows:

As a contribution to the capital of said partnership, the parties hereto shall contribute their respective undivided percentage interests as hereinbefore set forth in the assets of the Michner Plating Company except as may hereinafter be specifically provided, including all of the machinery, tools, equipment and appliances of said business.

Paragraph 9 of the agreement provides for the sharing of profits and losses, as follows:

Each partner shall share proportionately to their respective interests in all of the profits and losses that may arise out of or be incurred in the transaction of said partnership operations, except that the salaries drawn and the bonuses received by the said Joseph Michner and the said Walter Michner in accordance with the agreement herein contained, shall not be charged up against their respective shares of said profits, but shall be considered as additional compensation for services rendered.

80

Paragraph 16 of the agreement provides for the distribution of assets on the dissolution of the partnership, as follows:

In case of a termination of this partnership from whatever cause except as hereinbefore stated, the parties hereto agree that they will make a true and just final accounting of all matters relating to said business and in all cases duly adjust the same. After all of the affairs of the partnership are adjusted and its debts paid off and discharged, then all the stock as well as the gain or increase thereof which shall appear to be remaining either in money, goods, fixtures, debts or otherwise, shall be divided between the parties hereto in accordance with their proportionate interests.

Paragraph 17 of the agreement refers to the distribution of profits and reads as follows:

Semi-annually upon the first day of June and upon the first day of December during the continuance of this partnership, in the event that the books of said partnership disclose a balance of funds over and above the total of all outstanding claims and the amount of the original capital, then in such an event the amount of profits of said business as shown by the books shall be divided between the parties hereto in accordance with their proportionate interests and withdrawn from said business unless the parties mutually agree to leave such funds in such business for the good of the business.

There are other provisions in the partnership agreement not quoted above for the reason that to do so would make this dissenting opinion too long. The provisions quoted will, I think, make it perfectly plain that the partnership agreement was a well integrated and well drawn document.

After the formation of the new partnership as evidenced by the foregoing partnership agreement dated January 3, 1941, drawing accounts and investment accounts for each of the fourteen partners were set up on the books of the company. Division of profits was made by checks of the company payable to each of the fourteen partners in accordance with his proportionate interest. Public recognition was given to the partnership. Dun & Bradstreet was notified of the new partnership and its membership. The bank where the company did business was told about it as well as several factories with which the company did business. In July of 1941 a suit was started in the Circuit Court for the County of Ottawa wherein the fourteen members were named as party plaintiffs. Yet in the face of all these undisputed facts the majority opinion says there were no completed gifts from petitioners to their respective wives and children. Therefore, says the majority opinion, the latter had nothing with which they could make a capital contribution to the business.

Suppose we had here a gift tax case instead of an income tax case, does any one suppose that the Commissioner would be contending that the gift which petitioners made their wives and children was incomplete? Certainly not. He would be taxing the gift in the year it was

made, 1941, as would be his duty. See *Robert P. Scherer*, 3 T. C. 776.

I do not think the gifts were rendered in the least invalid by that clause in the agreement executed January 2, 1941, by the four petitioners here, who were then the four partners composing the firm of Michner Plating Co., which provided for their continued management of the new partnership which was about to be organized. That clause reads in part as follows:

It is further mutually understood and agreed that the parties hereto, having at the present time the control and management of said partnership, shall retain such control and management of said partnership regardless whether such afore-described transfers are made or not. * * *

The partnership agreement of January 3, 1941, signed by all the fourteen partners, fully recognized this continued management and control of the four former partners provided for in the above quoted paragraph. This provision for management and control in no wise invalidated the new partnership. On this point see *Commissioner* v. *Olds*, 60 Fed. (2d) 252, and *Robert P. Scherer, supra*, at page 793.

In arriving at its conclusion that what was done in the instant case by petitioners amounted to a mere assignment by them of a part of their partnership profits to their wives and children, the majority opinion cites only one Supreme Court case, *Burnet* v. *Leininger*, 285 U. S. 136. It seems to me that *Burnet* v. *Leininger* is altogether inapplicable to the facts in the instant case. In that case the Supreme Court affirmed a decision of the Board of Tax Appeals reported at 19 B. T. A. 621. The partnership there involved was the Eagle Laundry Co. in which Charles P. Leininger owned a one-half interest and another partner owned the other one-half interest. Leininger undertook to make his wife a subpartner in his one-half interest without making her a full partner in the Eagle Laundry Co. This fact is shown in the following quotation taken from our opinion in that case:

It is observed from the testimony in the case that the books and records of the Eagle Laundry Co., the partnership, contained no entry reflecting part ownership by the wife or any payments to her or for her account. Partnership returns for the taxable years 1921, 1922, and 1923 were sworn to by petitioner and state that the names of the partners are C. P. Leininger and M. T. Monaghan, each owning one-half. We note further that Mrs. Leininger contributed neither capital nor services to the partnership and that all checks covering profits were made to the husband and by him deposited in a joint account. * * *

On these facts we held that Mrs. Leininger was at most a subpartner in her husband's one-half interest in the Eagle Laundry and that this amounted only to an assignment of income and that such an assignment was ineffective to relieve the assignor, Leininger, from payment of tax on the income thus assigned. This view was upheld by

the Supreme Court, Chief Justice Hughes saying, among other things, in his opinion, as follows:

* * * There was no transfer of the corpus of the partnership property to a new firm with a consequent readjustment of rights in that property and management. If it be assumed that Mrs. Leininger became the beneficial owner of one-half of the income which her husband received from the firm enterprise, it is still true that *he*, and not she, was the *member* of the firm and that she had only a *derivative* interest. [Italics supplied.]

In the instant case we have no such situation as the Supreme Court pointed out was present in the *Leininger* case. Here we have the creation of a new partnership with recognition of the wives and children as full partners, entitled to share in the profits and liable for the losses. There was a transfer by the old partnership of its assets to the new partnership, a thing which Chief Justice Hughes pointed out was not present in the *Leininger* case.

The assignment of income doctrine of *Burnet* v. *Leininger*, *supra*, and *Lucas* v. *Earl*, 281 U. S. 111, upon which the *Leininger* case was decided, would be present in the instant case if, for example, Joseph Michner and Walter Michner, who were paid $250 and $200 a month, respectively, plus bonuses, as managing partners, had assigned part of their earnings to their wives. Such an assignment would have been ineffective under *Burnet* v. *Leininger* and *Lucas* v. *Earl* to relieve them from paying income tax on the part of their compensation thus assigned. But no such assignments were made by them. They returned as their individual income the salaries and bonuses which were paid them by the partnership for their services. The balance of the partnership profits, after the deduction of salaries and bonuses paid to Joseph and Walter Michner and other expenses of the firm, was divided among the respective partners, and each returned his share of the profits for taxation.

Sections 181 and 182 of the Internal Revenue Code require each individual who is a member of a partnership to return for taxation his share of the net income of the partnership, whether it is distributed to him or not. These statutes have been complied with in the instant case, and I do not see where the law requires more. If it be said that to tax partnership income in this manner where there is a valid family partnership, as I earnestly believe there is here, loses revenue to the Federal Government, then the remedy lies with Congress and not the Tax Court. Congress could, of course, tax partnership income as a unit, as it does corporation income, but it has not done so. Therefore, I see no legal authority to tax all the income of a valid partnership such as we have here to only four of the partners as the majority opinion undertakes to do.

Again I must emphasize that this is no mere assignment of income case. This is a case where the property which produced the income

has been transferred. It is certainly the well recognized rule that the ownership of property determines the taxability of income. *Poe* v. *Seaborn*, 282 U. S. 101. In considering such a question as we have here, I think we would do well to consider what the Supreme Court said concerning this principle of ownership of property determining the taxability of income in *Blair* v. *Commissioner*, 300 U. S. 5. In that case, among other things, the Court, speaking through Chief Justice Hughes, said:

Our decisions in *Lucas* v. *Earl* * * * and *Burnet* v. *Leininger* * * * are cited. * * * These cases are not in point. The tax here is not upon earnings which are taxed to the one who earns them. * * *

In the instant case, the tax is upon income as to which, in the general application of the revenue acts, the tax liability attaches to *ownership*. See *Poe* v. *Seaborn*, supra ; *Hoeper* v. *Tax Commission*, 284 U. S. 206. [Italics supplied.]

The Supreme Court, in its later decisions in *Helvering* v. *Horst*, 311 U. S. 112, and *Helvering* v. *Eubank*, 311 U. S. 122, both of which were assignment of income cases, seems to make it plain that its decision in the *Blair* case is not overruled.

Just about one year ago the Tax Court, after very considerable discussion and consideration, adopted *Robert P. Scherer, supra; J. D. Johnston, Jr.*, 3 T. C. 799; *Felix Zukaitis*, 3 T. C. 814; and *M. W. Smith, Jr.*, 3 T. C. 894. The Commissioner has published his acquiescence in all four of these decisions. All four of them were referred to by the Sixth Circuit in a footnote to its recent opinion in *Tower* v. *Commissioner, supra*. It was my thought that the adoption of these cases would set a pattern which would enable the Tax Court to reach a fair degree of uniformity in the decision of these family partnership cases where capital is a substantial income-producing factor, and where the partnership earnings were not due primarily to personal services as they were in one of the line of cases cited in *Robert P. Scherer, supra*. None of the four cases mentioned above, except that of *Felix Zukaitis* are even referred to in the majority opinion. The distinction which the majority opinion undertakes to make as to that case is, in my opinion, a very unsubstantial one. It is stated as follows:

If the business of Michner Plating Co. had been operated by Joseph Michner as a sole proprietorship and he had undertaken to make his wife an equal partner, claim for recognition of the partnership might be made on the reasoning of cases like *Felix Zukaitis*, 3 T. C. 814, but that is not the situation. * * *

It indeed seems to me a strange principle of law which would recognize the validity of a partnership between husband and wife where the husband was operating a business as a sole proprietorship, as was Zukaitis, and gave his wife a one-half interest and thereupon entered into a partnership agreement with her, and at the same time would refuse to recognize as valid a similar partnership where four partners did the same thing. In other words, one can do it and it is legal, but

four can not. I must confess that I am unable to grasp the reasoning back of such a distinction. As I have already stated, the majority opinion makes no attempt to distinguish *Robert P. Scherer, J. D. Johnston, Jr.,* and *M. W. Smith, Jr.,* all *supra.* It is my opinion that the effect of the majority opinion is to overrule all three of those cases without even mentioning them. This, I think, can only make for much confusion and is a most unfortunate situation. I, therefore, respectfully record my dissent.

Tyson, *J.,* agrees with this dissent.

———

Disney, *J.,* dissenting: Although the majority opinion discusses and is, in effect, based upon a denial of actuality of a partnership, the real question is, of course, whether the petitioners retained, after conveyance to their families, such complete ownership in the assets and business that they should be taxed upon the entire income thereof, instead of only in part. In other words, the gist of this problem is: Is this a case of mere assignment of income, so that under *Lucas* v. *Earl,* 281 U. S. 111, and other cases to the same effect, the petitioners must be viewed as still taxable thereon? The answer depends upon whether or not gifts, completed and to be recognized, were made by them to their families, for that all parties did, with the assets involved, enter into a partnership can hardly be denied, and I understand that the respondent did not so deny. If by the transfers made the petitioners did not merely assign income, error appears in the taxation of the entire amount thereof to the petitioners.

The facts here presented are, in substance, that the petitioners owned a large amount of property. The returns filed ascribed to it a value of $109,464, including equipment at $29,556.69 and assets formerly belonging to a corporation, the Anodizing Co. of Jackson, Inc., of a value of $10,935. (The stock of this corporation had belonged to the four petitioners, but had been transferred to their families, the corporation dissolved, and the assets transferred to the partnership.) All of this property was the subject of gifts to the petitioners' families. Though the majority opinion takes the view "that in effect all that the wives and children could ever receive was shares of the distributable profits of the business," the facts show that at the termination of the partnership the entire assets thereof must be distributed to the partners in proportion to their respective interests. This is altogether consistent with the transfers made. The agreement of partnership recites that such transfers had been made, and the interest of each of the transferees was set forth in writing. It is further recited that each contributes his share of the assets as a contribution to the capital of the partnership. It is certain. I

think, that the transferors could never deny the gift. Particularly as between members of a family, exactitude in form of gift is not required. Though real estate was involved, it is hornbook law that acknowledgement of an instrument is not necessary as between the parties. Likewise, between the parties general description suffices. *G. R. Holcomb Est. Co.* v. *Burke*, 48 Pac. (2d) 669; *Moayon* v. *Moayon*, 72 S. W. 33.

Had any of the wives, for instance, in case of divorce, or any of the children, been denied ownership of the interest conveyed to them, I have no doubt at all that any court would sustain their claims thereto. Yet, the majority opinion treats the gift as unreal. Such view must be upon the theory that the gift was in some way conditional; yet, reading the law of gifts, we discover that a gift is none the less complete and real because of conditions attached thereto, if ownership is vested in the donee, even though powers, such as agency and even some reservation of proprietary rights are retained by the grantor over the subject matter of the gift.

The law on the point is reviewed in 38 C. J. S. on Gifts, pp. 815-817, and need not be set forth here. Gifts have been sustained, though reserving stock dividends for life, *Smith* v. *Commissioner*, 59 Fed. (2d) 533; *Grissom* v. *Sternberger*, 10 Fed. (2d) 764; though reserving possession, *Kathryn Lammerding*, 40 B. T. A. 589; affd., 121 Fed. (2d) 80; *H. B. Garden*, 16 B. T. A. 592; though reserving the right to pledge the gift, *Bingham* v. *White*, 31 Fed. (2d) 574; *Estate of Lorenzo W. Swope*, 41 B. T. A. 213; though donor retained legal title in stocks transferred on books of account, *Hogle* v. *Commissioner*, 132 Fed. (2d) 66. I can see nothing in the facts here presented which indicates that the donees failed to receive title to absolute gifts, or that there were conditions or qualifications inconsistent with the vesting of title. It is true that the grantors were to exercise broad powers in the management of the partnership business, but all such powers are clearly within the category of agency and management, altogether consistent with title in the donees. Provisions as to inability of a partner to dispose of his interest, emphasized by the majority opinion, are of no weight, since it is primary law of partnership that it is a voluntary arrangement and a partner may not by sale of his interest impose a stranger upon his partners; and a gift may provide for inalienability by the donee. 38 C. J. S. 816. Thus, it appears that each of the various members of the petitioners' families had a contractual and enforceable right to a pro rata share of the entire assets conveyed, and not merely to profits of the operation of a partnership.

The majority opinion, however, in effect, denies the *bona fides* of the transfers. If the transfers are valid under the law, enforceable, permanent, how can it logically be maintained that they are not *bona fide?*

No secret arrangements or reservations contradictory of the gifts appear or are relied on. The only possible attack upon the transfers must rest upon the conditions specifically and openly set forth in writing. Those conditions are consistent with vested gifts, and do not invalidate them. The idea of *mala fides*, therefore, is seen to amount to one that intent to reduce taxes is bad faith. But are we to contradict *Gregory* v. *Helvering*, 293 U. S. 465, and all those cases in which we agree with it, and which in substance inform the taxpayer that he may, by lawful means, minimize his taxes? Are we to say that intent to reduce taxes, by an absolute gift of property, e. g., by deed of a one-half interest in real estate, destroys such deed for tax purposes? This would be, in my view, unconstitutional interference with one's right to dispose of his property. A gift of an interest in a business, including its assets, which interest the donor might sell to another, perhaps for a large sum, is logically in no different category than the mere parcel of real estate above suggested. The majority opinion refuses to recognize such gift, obviously merely because of skepticism as to the good faith, of a permanent and irrevocable conveyance. Yet, here we see that in addition to transferring interests in other assets in business, the petitioners had, so far as the Anodizing Co. of Jackson, Inc., is concerned, owned corporate stock, had transferred it to their families, and the assets thereof had, after dissolution, been transferred to the partnership. Such gift of corporate stock is condemned. So far does the majority opinion go in preventing the disposition of property by gift. The gifts were not subject to revocation. This was no temporary reallocation of family income, but a permanent disposition of property. (Is not the element of "temporary" in the language of *Helvering* v. *Clifford*, 309 U. S. 331, negation of the idea that a *permanent* division of property may be disregarded. If we had here a revocable transfer, directly or indirectly, or one giving in fact no legal or economic benefit to the donees, clearly no completed gift would appear, and therefore no capital contributed to the partnership. But the exact opposite is the fact.)

So far as the majority opinion expressly or impliedly relies upon the idea that state laws as to partnership and compliance therewith in this transaction do not bind, we need only remember that the definition of partnership in section 3797 (a) (2) of the Internal Revenue Code is very broad indeed, and that the arrangement between the petitioners and their families falls well within its ambit. In short, under its language there was here a real and recognizable partnership.

To say this record shows a mere right in the petitioners' families "to receive whatever profits of the business might be determined by petitioners to be distributable to them," neglects not only the liability

of the members of the families for partnership losses, as provided in the articles of partnership, but their receipt as absolute owners of the entire partnership assets upon termination of partnership. I find it impossible to conceive that such a conveyance of extensive assets is a mere conveyance of the right to income, and therefore prohibited.

The law of gifts, and partnership, the growth of centuries of jurisprudence, is no mere attenuated subtlety or nicety of the conveyancer's art, but a long traveled road which we might well follow instead of turning aside on a bypath of doubt, uncertainty and deviation from justice. For, if we disregard rules furnishing assistance in determining rights in property and of contract, we appear left with no guide, except our agreement or disagreement that the transaction should be given tax effect. By what other measure shall we then judge? An irrevocable and absolute gift is a very real matter in its financial and economic effect on grantor and grantee, for it transfers property from one to the other. Had it not been for statutory exemptions, a very real gift tax would have been payable by petitioners. Given very real effect in all other branches of law (including gift tax law), why and how then may a gift be considered nil in the law of income taxation?

It is no answer to say that, "taken altogether" or "taken as a whole," the transaction of gift and partnership was unreal; for the parts of the whole are real—long recognized and effective concepts and rules binding the parties. The "taken altogether" idea is a tacit confession that bad faith, in the sense of tax avoidance, is the basis of decision.

Also, even if it be considered that through the arrangement made the petitioners' families receive the benefit of income from the petitioners' services to some extent, it is clear that, in so far as he taxes the petitioners upon the entire income produced both by the property transferred and by petitioners' services (two of them were inactive), the Commissioner erred, if the petitioners' families were the owners of property contributing to the production of such income. Believing that they clearly became the owners of such property, I suggest that error has been shown in the determination of deficiency under the principles announced in *Helvering* v. *Taylor*, 293 U. S. 507, in that it is without rational foundation and excessive, unless it is true that there were no gifts made. The petitioners, even though their families get some benefit from their services, may not, with good reason, be taxed upon the entire partnership income, and an error has been committed equally as egregious as might be involved if petitioners escaped some taxation in the process here involved. Where, as here, some services, not from all petitioners, are involved along with large amounts of capital belonging to them and others, it seems to me, there having been not mere conveyance of right to income, but of property con-

88

tributing at least in large degree thereto, that taxation may with safety follow the long established concepts involved in the law of gifts and of partnership, and impose taxation in accordance with the gifts and partnership agreement with more assured results than by taking counsel of suspicion to the disregard of salutary principles of law. The result here, it appears to me, makes tax evasion out of what at most is tax avoidance through proper exercise of the individual's right to make gifts of his property and to enter into contracts therewith. The income from the property here appears inseparable from any to be ascribed to personal services, and in my opinion it is illogic to say that there is prohibited assignment of income. The question, depending as it does upon the validity of gifts, is not one of fact, but of law, if there is no evidence reasonably sustaining the denial of completed gift, as I think plainly appears. I would hold the Commissioner to be in error, and I therefore respectfully dissent.

Tyson, *J.*, agrees with this dissent.