S. Wise v. Commissioner.
S. Wise v. Commissioner
Docket No. 5721.
United States Tax Court
1945 Tax Ct. Memo LEXIS 78; 4 T.C.M. (CCH) 898; T.C.M. (RIA) 45298; September 25, 1945
Lloyd F. Loux, Esq., 1000 N.B.C. Bldg., Cleveland, O., for the petitioner. William F. Robinson, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of a deficiency in income tax for the calendar year 1941 of $4,756.84. The petition alleges that the respondent erred in the determination of the deficiency by - (1) Including in gross income $7,818.64 representing a portion of the profits of an alleged partnership existing from September 1 to December 31, 1941, which were taxable to petitioner's wife and two minor children; (2) Disallowing the deduction of $72.75 paid for advertising and the upkeep of the personal residence of the petitioner which was *79 vacated during 1941 and offered for sale or rent; and (3) Including in petitioner's gross income $12.20 which was interest received by his minor daughters upon certain savings accounts. The respondent concedes error with respect to the inclusion in gross income of the $12.20 item. Findings of Fact The petitioner is a resident of Shaker Heights, Cleveland, Ohio. He filed his income tax return for 1941 with the collector of internal revenue for the eighteenth district of Ohio, at Cleveland. In about 1921 petitioner invented a series of concentric-type tube locks and shortly thereafter applied for and secured patents thereon. Since that date the petitioner has applied for and received a number of other patents with reference to the locks. These locks are designed for use on auto gas tanks, auto wheels, bicycles, etc. For a time he had the different parts of the locks made for him by numerous manufacturers and he, with a few employees, did the assembling. In 1927 he licensed his patents to a manufacturer for a period of five years. In 1933 petitioner discontinued licensing of patents and resumed manufacture and sale of the locks. The business was started in 1933 with an original *80 capital of $2,500, some dies received from the former licensee, and some tools, etc., which had been accumulated by the petitioner. The new business was operated under the name of the Wise Lock Company and was carried on in Cleveland. In all, some 35 or 40 patents were developed during the 20-year period ending in 1941 and all patents were taken out in petitioner's name. The manufacturing done by the petitioner consists almost entirely of the assembling of parts purchased under contract from outsiders and from five to ten persons have been employed. The year 1941 was a prosperous year for the company and there are unmistakable indications of increased prosperity for subsequent years. Petitioner was married in 1928 and in 1941 he had two daughters aged 9 and 10, respectively. In talks with an insurance agent he became convinced that in case of his death a large part of his estate would go for inheritance and estate taxes. The insurance agent advised him to take out a large annuity policy which would protect his wife and children. Instead of doing so he decided to create a partnership out of his business, making his wife and two minor daughters members of the partnership. *81 Acting upon such suggestion a plan was evolved under which petitioner was to make gifts of certain of his securities to his wife and two minor children who would in turn "buy" interests in the partnership. The alleged gift by petitioner to his wife was to consists of certain shares of stocks of different corporations, registered in petitioner's name and representing an alleged value of $5,000. The two minor children were to receive shares of stock also registered in petitioner's name of an alleged value of $2,500 each. The securities purporting to be the subject matter of the alleged gift at all times remained in petitioner's possession. They were not delivered to the wife or to the children, nor were they transferred into the names of the alleged donees. The petitioner at all times received the dividends paid upon the shares. There was an understanding between the petitioner and his wife that the securities, if and when given to the wife and children, were to be simultaneously "transferred" back to the petitioner for an interest in the partnership. The children knew nothing about the purported gifts nor, indeed anything about becoming partners in a business. The petitioner *82 filed a gift tax return of the alleged gift of the shares to his wife of a value of $5,000 and paid a gift tax of $16.50. No gift tax returns were filed for the alleged gifts to each of the two children inasmuch as the amounts thereof did not require filing returns. A partnership agreement was executed on September 1, 1941, by the petitioner and his wife, Florence I. Wise. Petitioner's wife also signed the agreement for the daughters, Barbara N. Wise and Virginia S. Wise. Petitioner's wife had never been appointed legal guardian for their two minor children. Article III of the partnership agreement provides that the "partners" are to share in profits and losses according to the following percentages: Solomon Wise
50 percent
Florence I. Wise
25 percent
Barbara Nan Wise
12 1/2 percent
Virginia S. Wise
12 1/2 percent
Article V provides that the petitioner is to act as general manager of the firm's business. He is to be paid a salary and shall be charged generally with the conduct and affairs of the business. It was entirely at the discretion of the petitioner how much would be paid him as his salary. The distributive shares of the "partners" were to be determined *83 after the deduction of the salary which the petitioner saw fit to take. Article VI defines the contributions by the partners: "The contributions of the several members of this firm shall be as follows: "Solomon Wise
all his right, title and in-
terest in and to certain
patents, trade names,
trade marks and good
will, if any, as set forth
in Exhibit A, attached
hereto and make a part
hereof.
Florence I. Wise
$5,000.00 in cash, or equi-
valent.
Barbara Nan Wise
$2,500.00 in cash, or equi-
valent.
Virginia S. Wise
$2,500.00 in cash, or equi-
valent."
Article VIII reads as follows: "The General Manager shall have the right generally to conduct the business of the firm, negotiate any and all contracts, authorize and execute all necessary papers, open and operate bank accounts and do all other things necessary and incident to the continuation of the firm's business, unless such rights are curtailed by the unanimous consent of all the partners. "No partner, as such, shall have the right to make contracts affecting the business of this firm nor in any fashion obligate the firm; these rights and powers being exclusively vested in *84 the General Manager, or by unanimous action of all the partners." Article IX reads: "In the event that this firm be dissolved for any reason prior to the death of Solomon Wise, he shall have the right to buy back all the patents, trade names, trade marks and good will, if any, set forth in Exhibit A attached hereto and made a part hereof, at a price to be agreed upon by the members of this firm, such price not to exceed the sum of Ten Thousand Dollars; and he shall have the right in any event to reproduce such property at a maximum of Ten Thousand Dollars." The petitioner was to be the general manager. No formal notice of the change in petitioner's business from sole proprietorship to an alleged partnership was sent to creditors. Petitioner did, however, notify "a few of the close, personal intimate friends, and Dun & Bradstreet." No certificate of doing business in partnership form was filed with the county clerk. The Wise Lock Co. operated under the same name both before and after the formation of the alleged partnership and used the same letterhead., there was no change in the product manufactured; there was no expansion of facilities; petitioner continued to have absolute *85 control over the business; petitioner drew a salary for the period which the alleged partnership was in business in 1941, the amount thereof being determined by him; and the assets and liabilities were in no respect changed as a result of the alleged partnership agreement. Prior to marriage Florence I. Wise was a registered nurse. After marriage she maintained her household. She accompanied the petitioner to conventions and "intermingled" with the buyers' wives, some of whom she had known for some time. The conventions were normally held twice a year. She would go to the petitioner's plant "occasionally." She had no business experience; she had no familiarity with the company's books; she owned no property in 1941 aside from some bank accounts. No withdrawals were made from the petitioner's business in 1941 for petitioner's wife or for either of the two children. Capital accounts were set up on the books of account as of September 1, 1941, which sho was follows: S. Wise (personal)
$15,737.25
S. Wise (capital)
10,000.00
Florence I. Wise (capital)
5,000.00
Virginia S. Wise (capital)
2,500.00
Barbara Nan Wise (capital)
2,500.00
The first cash distribution *86 was made to the "partners" in April, 1942. Checks were drawn April 16, 1942, in the amounts of $7,818.65 to the petitioner, $3,909.32 to Florence I. Wise, $1,954.66 to Barbara Nan Wise, and $1,954.66 to Virginia S. Wise. The amounts distributed to Florence I. Wise and the two minor children in 1942 were deposited in separate savings accounts in the Shaker Heights Savings & Loan Bank. Money was drawn from these accounts for the purpose of paying income taxes and for the purpose of making investments in United States bonds. Prior to and during a part of 1941 the petitioner resided at 18407 Scottsdale Blvd., Shaker Heights. In 1941 he built a new residence at 2870 Manchester Road, Shaker Heights, and moved into the house as soon as it was completed. His house on Scottsdale Blvd. was then offered for sale or rent but was not sold or rented during 1941. During 1941 the petitioner spent $72.75 for advertising of the place, putting up for-sale signs, etc. This deduction was disallowed by the respondent. Opinion The principal question presented by this proceeding is whether the petitioner is taxable upon the entire net income of the Wise Lock Co. from September 1 to December 31, 1941, or *87 upon only one-half of that amount. The petitioner claims that the business was operated as a partnership during this period and that pursuant to the provisions of the partnership agreement he is taxable upon one-half of the net income; his wife upon one-fourth of the net income; and each of his two minor children upon one-eighth of the net income. The question presented is whether the Wise Lock Co. during this period was operated as a partnership within the meaning of the income tax law. Section 181 of the Internal Revenue Code provides that "Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity." Section 3797 of the Internal Revenue Code provides in part as follows..
SEC. 3797. DEFINITIONS. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof - * * * * *
(2) Partnership and Partner. - The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, *88 within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization. In order to have a valid business partnership under the internal revenue laws there must be a contribution by all the members of the partnership of either services or capital, or both. Meehan v. Valentine, 145 U.S. 611; Camiel Thorrez, 5 T.C. 60 (on appeal, C.C.A., 6th Cir.). A partnership agreement for the sharing of profits is not necessarily a valid partnership under the internal revenue laws. Earp v. Jones, 131 Fed. (2d) 292; certiorari denied, 318 U.S. 764. Meehan v. Valentine, supra. We think it plain that upon the facts which obtain in this proceeding there was no contribution of capital to the partnership by either the petitioner's wife or minor daughters. The petitioner purported to give to them certain shares of stock which they were to turn back to him as their contribution to the partnership. But the evidence indicates that the securities which were at all times registered in the petitioner's name never left his safety deposit *89 box; that there was never any transfer of the shares upon the books of the corporations which had issued the stock; and that after the alleged organization of the partnership the petitioner continued to receive the dividends upon them the same as he had formerly. It is furthermore to be noted that the shares of stock which were purported to have been retransferred by the petitioner's wife and minor daughters to him never became a part of the partnership's assets. They remained the petitioner's individual property after September 1, 1941, the same as before. Prior to September 1, 1941, the Wise Lock Co. was a sole proprietorship operated by the petitioner. He was responsible for all of its earnings. The formation of the alleged partnership made no change whatever in the operation of the business. The only change which was made was in the bookkeeping. It is the claim of the petitioner that his wife materially assisted him in the operation of the business. It is not contended, however, that she was an inventor or that she took any active part in the operation of the business. She testified that she could do the assembly work. But the petitioner testified that she only "occasionally" *90 came down to the plant. Clearly she performed no greater services for the partnership than she had performed for the sole proprietorship. The petitioner cites many Board of Tax Appeals and court cases which he contends support his contention. But the more recent cases both of the Tax Court and of other courts sustain the respondent. See Doll v. Commissioner (C.C.A., 8th Cir.), 149 Fed. (2d) 239; Lusthaus v. Commissioner (C.C.A., 3rd Cir.), 149 Fed. (2d) 232; Grant v. Commissioner (C.C.A., 10th Cir.), 150 Fed. (2d) 915 (decided July 19, 1945); Lorenz v. Commissioner (C.C.A., 6th Cir.), 148 Fed. (2d) 527; affirming 3 T.C. 746; Miller v. Commissioner ( C.C.A., 2nd Cir., 150 Fed. (2d) 823 (decided July 9, 1945). In the instant case the alleged partnership agreement was not for the primary purpose of carrying on a business in partnership form but for the purpose of building up separate estates for the petitioner's wife and minor children so as to reduce inheritance taxes. Article V of the partnership agreement provides that the petitioner is to act as general manager of the firm's business and is to be charged *91 with the conduct of the business. It was entirely within his discretion as to what amount he could deduct as his salary. The distributive shares of the "partners" were to be determined after the deduction of the petitioner's salary. This provision of the partnership agreement gave the petitioner all of the economic benefits of the partnership. He had it within his power to take all of the profits of the partnership. The facts here are similar to those which obtained in A. R. Losh, 1 T.C. 1019; affd., 145 Fed. (2d) 456, where we applied the rule of Helvering v. Clifford, 309 U.S. 331. The rule is equally applicable here. We think it clear upon all of the evidence of record that the petitioner is taxable upon the entire net income of the business conducted under the name of Wise Lock Co. for 1941. A further question is presented as to the right of the petitioner to deduct from his gross income $72.75 allegedly representing expenses incurred in attempting to sell petitioner's residence which he vacated in 1941. Section 23(a)(2) of the Internal Revenue Code, as amended, permits the deduction from gross income of "all ordinary *92 and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income." At one point the petitioner testified that the expenditures here in question were in connection with advertising and the upkeep of his property for sale or for rent. He was asked further: What efforts did you make along those lines? A. I advertised in the paper, had signs made, appointed real estate agents and gave them keys and generally kept the property up. We do not think that the proof shows that these expenses qualify as amounts paid out for the management, conservation or maintenance of property for the production of income. See Mary Laughlin Robinson, 2 T.C. 305. The respondent's disallowance of the deduction is sustained. Decision will be entered under Rule 50.