A. H. Moore v. Commissioner.
A. H. Moore v. Commissioner
Docket No. 16740.
United States Tax Court
1948 Tax Ct. Memo LEXIS 8; 7 T.C.M. (CCH) 988; T.C.M. (RIA) 48273; December 29, 1948
*8 In 1921, petitioner and his wife entered into an oral agreement to engage in the business of constructing ornamental iron work. Petitioner's wife contributed the original capital, took complete charge of the office, rendered other services vital to the enterprise such as computing cost figures, assisting in preparing estimates, etc. In 1939, petitioner's wife was formally included in a partnership agreement providing for the enlargement of the company to include petitioner, his wife, his son and a former employee as partners. Since the inception of the business, petitioner's wife had had an equal voice in its management and control. Held, that a real partnership existed and Commissioner's action in taxing to petitioner his wife's share in the profits of the business for 1944 is not approved. C. B. McInnis, Esq., Transportation Bldg., Washington, D.C., and Harold A. Kertz, Esq., for the petitioner. Louis A. Boxleitner, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion VAN FOSSAN, Judge: The respondent determined a deficiency of $3,920.59 in the petitioner's income tax liability for the year 1944. The single issue is whether petitioner's *9 wife was a partner in a partnership known as the Moore Metal Manufacturing Company during the taxable year and was taxable on her share of the partnership income, or whether such share was taxable to petitioner. Findings of Fact The petitioner is an individual residing in Greensburg, Pennsylvania. He filed his intome tax return for the taxable year with the collector of internal revenue for the 23rd district of Pennsylvania. The petitioner is a graduate of Purdue University, having received the degree of Civil Engineering from that institution. He married his wife, Alma E. Moore, in 1909. At the time, he was working for the American Bridge Company in Indianapolis. During a depression, he went to work for the Memphis Steel Construction Company; later was with the Nashville Bridge Company and yet later returned to the Memphis Company which had moved to Greensburg, Pennsylvania. In 1921, the financial condition of the Memphis Company became precarious and it released its higher salaried employees, including the petitioner. The petitioner was out of employment for six months and had spent most of his ready cash. A friend suggested that the petitioner engage in the ornamental iron *10 work, about which petitioner knew nothing. His friend promised to teach him and insisted that he enter that business. He was given the opportunity of bidding on doing the ornamental iron work on the Union Trust Bank Building in Greensburg. Mrs. Moore had been trained as a stenographer and a bookkeeper and had been employed for eight years before she was married. She had accumulated savings and had invested some of them in Liberty Bonds. She had inherited about $500 from her brother's estate. She urged her husband to engage in the proposed business and to use her savings to supply the needed capital. He consented to do so on the condition that they jointly undertake the venture. He agreed that he would match her capital and that upon the completion of the contract the profits would be divided equally. The ftrst venture was successful, a second job was obtained and the petitioner and his wife decided that they "had the beginning of a business." Thereupon they entered into an oral agreement that they would continue the operation of their partnership with an equal division of the profits. In October 1921, Mrs. Moore originally contributed from her own resources to the capital of *11 the partnership the sum of $899.77. Entries were duly made on the partnership books reflecting such contribution. On October 11, 1921, the petitioner contributed $300.23 due to him from and paid by the Memphis Steel Construction Company. On December 3 and December 8, 1921, he contributed to capital the sums of $400 and $100, respectively, and on January 7, 1922, two dollars, totaling $802.23. On the last named date, the aggregate partnership capital was $1,702. Mrs. Moore's capital investment was expended for office costs, tools and equipment with which the business was started. On April 22, 1924, petitioner contributed an additional $1,125. During the earlier years of the partnership the partners withdrew only such sums as required for their living expenses and permitted the remainder of its earnings to serve as working capital. At the outset the petitioner, who had no bookkeeping experience, and his wife agreed that she would have complete charge of the office and do the bookkeeping. She also handled the invoices, prepared cost records, assisted in compiling estimates and performed other such duties. At first the partnership books were simple but as the business grew they installed *12 more elaborate books. A large part of the records and entries of the business is in Mrs. Moore's handwriting. The petitioner did the outside work and supervised the manual employees. From 1921 to 1927 the office was maintained in the home of the petitioner and his wife. In 1927 the present plant of the concern was built and the records were moved from the home to the office at the plant. Mrs. Moore continued to manage the office. During that year the company employed a clerk, recently graduated from high school, to make entries and do other clerical work. Mrs. Moore supervised, instructed and trained her but she herself continued to check the work and close the books. The assistant was married in 1929 and left the employ of the company. Mrs. Moore then reassumed all the bookkeeping and clerical work at the office in addition to continuing the management of it. In 1939 another inexperienced clerk was employed and Mrs. Moore repeated the necessary instructions to her. During the assistant's absence from the office for any reason, Mrs. Moore assumed her duties in addition to her own. This situation existed during the period from 1940 to 1944, inclusive. During the years 1921 to *13 1929, Mrs. Moore's work for the company required an average of about seven hours a day. When an assistant was employed the time was reduced to about three and one-half hours a day, the minimum time required after the assistant became proficient in her work. In addition, Mrs. Moore continued to prepare trial balances and to close the books. During the period from 1929 to 1939 she spent on an average of seven hours a day at her office duties. From 1941 through 1944 she devoted at least three and one-half hours a day to the company's business. She often worked on the books at night and on Saturdays and Sundays at her home. She collaborated with her husband in the preparation of bids and checking data relating to the company jobs. She had charge of the business when the petitioner or other partners were away. The petitioner and his wife worked jointly for the success of the business. They discussed fully prospective projects and the current progress of the various jobs. Mrs. Moore was particularly valuable to the business in keeping cost records of completed jobs as a basis for estimating and undertaking new work. She occasionally participated in sales. Nothing of a major character or *14 importance was considered or done without consulting her. In 1938 the petitioner's health was bad. He and his wife discussed the situation thoroughly and came to the conclusion that the partnership should be expanded by admitting to it an old and valued employee, J. V. Morford, and their son, Albert H. Moore, Jr. Morford previously had been given to understand that he could acquire an interest in the business and the son had been trained to succeed his parents therein. Thereupon, the petitioner, his wife, their son and Morford held extensive discussions relating to the terms and conditions of the partnership. These discussions culminated in the execution of a written agreement dated February 14, 1938, and signed by the petitioner, Morford and the petitioner's son. At the time, Mrs. Moore gave no consideration to the fact that she was not a party to the agreement since the business theretofore had been conducted in her husband's name. The agreement, prepared by an attorney, recited that the partnership should engage in the business of contracting for, manufacturing and erecting structural steel, ornamental metal, and industrial iron work; that the business assets of the Moore Metal *15 Manufacturing Company should be transferred to the new partnership; that the petitioner would hold the plant in trust for the partnership and upon the fulfillment of the contractual terms, convey the real estate to it; that Morford and A. H. Moore, Jr., had contributed $5,000 each to the partnership's capital; that the petitioner should receive 83 1/3 per cent of the profits of the business and Morford and A. H. Moore, Jr., each 8 1/3 per cent, and that the petitioner would make a gradual sale of his interests in the partnership to Morford and A. H. Moore, Jr., under certain terms and conditions specifically set forth. The agreement contained the following clause: "9th. On the 1st day of February, 1939, and on the same day on each subsequent year, a general account shall be taken of the assets and liabilities of the partnership and of all dealings and transactions of the same during the preceding year, and of all matters and things usually comprehended in Accounts of a like nature; and in taking such account, a just valuation shall be made of all items requiring valuation. Such account shall be entered in a book which shall be signed by all parties and when so signed shall be binding *16 upon them, except that a manifest error therein may be rectified within three (3) calendar months thereafter. The profits arising from the business and determined by such accounts shall be carried to the credit of the partners in the proportions hereinafter specified on the books of the copartnership, immediately after each annual account shall have been taken and signed. The profits of the parties of the second part hereto, as herein mentioned, shall be drawn out by A. H. Moore and applied to the credit of the parties of the second part, for the purchase of the A. H. Moore's partnership interest in accordance with paragraphs 11th, 12th and 13th, of this Agreement. All losses of the partnership shall be borne by the parties hereto in the same proportions as is herein provided for the allocation of profits." Other detailed provisions are not material. The agreement was signed by the parties and witnessed by Mrs. Moore as to her husband's and son's signatures and by Mrs. Morford as to her husband's signature. In view of her husband's ill health at the time the agreement was executed, Mrs. Moore's primary consideration was her desire to see the company continue and she said nothing *17 about her interest in it. Later she became convinced that she should have been named as a partner. A few weeks subsequent to February 13, 1938, Morford, whose chief ambition had been to join the partnership, began to realize that the death of a partner might create serious complications and that his own position would be more secure if Mrs. Moore's partnership interest was formally recognized. Thus she would be bound by the terms of the agreement. Accordingly, the four persons agreed that Mrs. Moore should be recognized as a separate partner in the original agreement and they prepared and executed the following addendum, which was written on the last sheet of the original agreement (following the signatures of the parties): "This addenda made this the first day of January, A.D. 1939, modifies the above partnership agreement as follows: "1. Alma E. Moore, wife of A. H. Moore, is taken into the partnership. "2. Her interest shall at all times hereafter be one half of that shown on the books of record to belong to A. H. Moore. "3. She is bound at all times to carry out the obligations of A. H. Moore as set forth in the original agreement the same as if she were mentioned as one *18 of the parties of the first part. "In witness whereof, the said parties to these presents have hereunto set their hands and seals. "Signed, sealed, and delivered in the presence of us: (s/A. H. Moore (SEAL) "s/Alma E. Moore (s/J. V. Morford (SEAL) (s/A. H. Moore, Jr. (SEAL)" Mrs. Moore signed the sheet as a partner and not as a witness. The formal dating and signing of the addendum were deferred until January 1, 1939. The execution of the agreement of February 14, 1938, and its addendum of January 1, 1939, was not prompted by tax evading motives. After the addendum of January 1, 1939 was executed, the books were changed to reflect the respective partnership interests of the petitioner, his wife, his son and Morford, and a capital account was opened for Mrs. Moore. Statements were prepared for the years 1939, 1940, 1941, 1942, 1943, and 1944 pursuant to Article 9th of the agreement and signed by all four partners shortly after its preparation, with the exception of A. H. Moore, Jr., who was in the Army, but who signed the statements covering the period of his military service shortly after he was discharged in December 1945. The capital accounts of the four partners *19 as they appear on the company's books are as follows: A. H.
Alma E.
J. V.
A. H.
Moore, Sr.
Moore
Morford
Moore, Jr.
1939
$23,729.44
$23,729.44
$ 6,270.56
$ 6,270.56
1940
22,607.48
22,607.48
7,692.51
7,092.51
1941
20,521.95
20,521.94
10,219.20
8,736.91
1942
17,779.07
17,779.08
13,014.79
11,427.06
1943
12,009.27
12,009.27
18,000.00
17,981.46
1944
10,000.00
10,000.00
20,000.00
20,000.00
Mrs. Moore never received a salary from the company as such, but in her income tax return for 1944 she reported $1,000 of her distributive share of the partnership profits as salary in order to conform to the regulations of the National Association of Ornamental Iron Workers which required that the theoretical cost of service must be reflected in the cost records of the various operations. In 1944 the petitioner and his wife withdrew substantial sums to buy Savings Bonds. These withdrawals were the only ones made by them after 1938 except withdrawals for living expenses. Mrs. Moore prepared the company's checks for signature by another person designated to sign them. This procedure was consonant with its policy to guard against errors. *20 At various times the petitioner and Morford had the authority to sign checks. A. H. Moore, Jr. did not have that authority until 1945. Mrs. Moore had no authority to do so. Mrs. Moore always had a bank account. From 1921 to 1944 she maintained an account in the Westmoreland Bank of Greensburg and on May 14, 1945, she opened an account with the First National Bank of that city. She exercised exclusive control over such accounts and also over the partnership profits distributed to her in 1944 or theretofore. From the inception of the business in 1921 to 1938, the petitioner has never considered himself to be the sole owner of the Moore Metal Manufacturing Company. He frequently discussed with others his wife's interest in the company and referred to her as his partner, stating that she had an equal interest in the business. Others who observed her conduct and participation in the management policy and affairs of the company regarded her as a partner in the enterprise. It was common knowledge that she was a working partner. At the time the partnership agreement was executed individuals were told of the formation of the partnership. The company's principal furnisher of raw materials *21 was furnished a statement showing the names of the individual partners to be the petitioner, Mrs. Moore, their son and Morford.. In his income tax returns for the years 1927 to 1937, inclusive, the petitioner treated the business of the Moore Metal Manufacturing Company as being conducted under his own name. No partnership returns were filed by the company prior to 1938. The first such return was filed in the year 1938 and reported the petitioner, his son and Morford as being entitled to distributable shares. Subsequent to 1938, the partnership returns reported the petitioner, his wife, his son and Morford as being members of the partnership. The name "Moore Metal Manufacturing Company" was registered on or about November 19, 1942, with the appropriate state and county authorities pursuant to the Fictitious Name Act of Pennsylvania. During the taxable year, the Moore Metal Manufacturing Company was operated as a valid and genuine partnership, consisting of the petitioner, Mrs. Moore, J. V. Morford and A. H. Moore, Jr., and the amounts of the distributive income as shown on the partnership return filed for that year are taxable to each respective partner. In his notice of deficiency *22 the Commissioner increased the petitioner's income from the partnership by $8,518 and appended the following explanation: "It is determined that the addenda appended to a valid partnership agreement dated February 14, 1938 between A. H. Moore, J. V. Morford and A. H. Moore, Jr., to conduct a business known as Moore Metal Manufacturing Company, purporting to take into the partnership your wife, Alma E. Moore, and to allocate to her one-half of the interest shown on the books as belonging to you, is without substance and not recognizable for Federal income tax purposes and that the entire income flowing from your interest in the partnership, Moore Metal Manufacturing Company, is taxable to you." Opinion The sole issue for our consideration is whether or not petitioner is taxable on the share of the partnership profits for 1944 distributed or distributable to Mrs. Moore under the amendment of the partnership agreement dated January 1, 1939. Each case of this type must be decided on its own facts, the pertinent principles applicable to the present problems being found in Commissioner v. Tower, 327 U.S. 280. In the Tower case the Court said: "A partnership is generally *23 said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses. When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.' * * * We see no reason why this general rule should not apply in tax cases where the government challenges the existence of a partnership for tax purposes. * * *
"There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated *24 by 26 U.S.C. §§ 181, 182, 26 U.S.C.A. Int. Rev. Code, §§ 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife. A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws." A brief resume of the early days of the company is appropriate. In 1921, petitioner had lost his position due to the financial difficulties of his employer. For six months he had tried to find employment and had exhausted most of his ready money. Finally, a friend suggested that he engage in erecting ornamental iron work. Petitioner hesitated but his wife induced him to take her savings in the bank as working capital and to embark on the venture. At that time they agreed to share the profits. Petitioner secured the job of erecting the ornamental iron work *25 on a local bank building. Another job was obtained and they then realized that they had "the beginning of a business." They reaffirmed their original agreement to share the profits and to continue the operation of the Moore Company as a permanent enterprise. From 1921 to 1938, the company, composed of the petitioner and his wife, continued to construct and install ornamental iron work and enlarged the business to include the fabrication and erection of structional steel. In 1938, petitioner's health was bad. He and Mrs. Moore desired to carry on the operation of the company. They then discussed at length with their son and Morford the formation of a partnership to include the two latter named men as partners. An agreement to that effect was executed on February 14, 1938. Since the old partnership had been established and carried on under petitioner's own name, the interest of his wife was not formally recognized. After the agreement was signed, Mrs. Moore and Morford realized that she should have been formally included in the agreement. Petitioner and his son agreed in this view and an addendum to the partnership agreement was prepared by the four partners and executed by them *26 under date of January 1, 1939. Thereupon the books of the company were changed to show the several interests of the four partners and a capital account was opened in Mrs. Moore's name to reflect her partnership interest in the company. Thereafter the statements made pursuant to Paragraph 9 of the agreement were prepared and signed by all the partners and other entries were duly made showing the transactions of each of the four partners. The company has continued to operate as such partnership since January 1, 1939. The Tower case sets up certain standards by which we may judge the verity of a husband and wife partnership. They are: the genuine intent to establish a partnership; the conduct of the partners pursuant thereto; the investment of capital originating with her, by the wife, or the wife's substantial contribution to the control and management of the business, and her performance of vital additional services for the benefit of the business. The record is convincing that, beginning in 1921, petitioner and his wife genuinely considered themselves to be partners in the ornamental iron business. Mrs. Moore contributed from her own funds the initial capital of $900 with which *27 the business was started. (See Felix Zukaitis, 3 T.C. 814.) During the first year petitioner contributed a somewhat smaller sum. As business grew, the profits (with the exception of some withdrawals for living expenses) were left in the business to provide more working capital. It was not until December 6, 1922, that petitioner added $500 to capital and on April 22, 1924, he paid in $1,125. From 1921 to 1938, when petitioner's son and Morford were taken into the business, the total capital contributed amounted to only $3,327, all other capital being represented by profits left in the company. The record shows that Mrs. Moore's capital contribution was never repaid to her and was not in any sense a loan. Not only did Mrs. Moore contribute the original capital on which the business was founded, but from the inception of the enterprise to the present time, she has contributed vital additional services to the business. She has had complete charge of the office work and as the business increased has had assistants. Her services have been especially valuable in calculating the costs of completed jobs and in computing the proper costs on new jobs as a basis for estimating and *28 bidding for them. (See Weizer v. Commissioner, 165 Fed. (2d) 772.) Mrs. Moore also contributed substantially and essentially to the control and management of the company's business. No important decision was made without her participation. She kept abreast of the progress of current jobs. She took entire charge of the business in the absence of the other partners. All such activities were vital to the success of the venture. Respondent stresses the failure of the books to show a partnership interest in the wife prior to 1938. We deem this fact immaterial in view of the record in the later years. Appropriate entries were made in the books to reflect the new partnership agreement effective January 1, 1939. We hold that during the taxable year the Moore Metal Manufacturing Company was a valid and legal partnership, consisting of petitioner, Mrs. Moore, A. H. Moore, Jr., and J. V. Morford, and that the income of such partnership should be taxed in accordance with the partnership agreement existing among the four partners. Decision will be entered under Rule 50.